## Neel's Administrator *versus* Neel.

1. Where a family relationship exists, as between father and son or grandson, or uncle and nephew, or even more remotely, no implied promise arises to pay for services rendered in such relation.

2. Where a family relationship exists, a contract or express promise must be established to sustain a claim for services, and the evidence ought to be clear and satisfactory.

3. Where there is evidence of a contract, if unwritten, it is for the jury to say whether it establishes the claim.

4. In a suit against an administrator for an indebtedness of the intestate, the declaration alleged an indebtedness of the "defendant." The court below would have allowed an amendment of the *narr.*, and the Supreme Court on error will treat it as amended.

November 2d 1868. Before THOMPSON, C. J., AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the District Court of *Allegheny county:* Of October and November Term 1868, No. 30.

This was an action of assumpsit by Samuel C. Neel against Robert Morrow, administrator, &c., of John Neel, deceased. The writ was issued November 23d 1866.

The plaintiff's declaration contained all the common counts, and alleged that the "*defendant*" was indebted to the plaintiff in the sum of $15,000; there was no count laying an indebtedness of the intestate to the plaintiff. The pleas were non assumpsit, &c., and the Statute of Limitations.

The plaintiff gave evidence that he was the nephew of the intestate; that his father having broken up house-keeping he went to live with the intestate about 1845 or 1848, being then about fifteen years old, and managed his farm; he married in 1865, and took his wife to the intestate's house, and lived on the

[Neel's Administrator *v.* Neel.]

farm till the fall of 1866. He also gave evidence that in 1856 the intestate said to a witness that the plaintiff talked about leaving him; and he did not know how he would get along without him, asked witness to see the plaintiff and get him to stay, he said he would pay plaintiff well. In 1864 or 1865 intestate said to same witness that plaintiff had determined to leave him, and he did not know what he would do if he left him; he asked witness to see the plaintiff and ask him to stay, that he would do better by plaintiff than he could do any place else; that he would give plaintiff more wages than he could get by anything he would be at. Another witness testified to a conversation between the intestate and the plaintiff in 1864. The plaintiff was going to leave, and the intestate said to him if he would stay he would give him $1500 a year.

The defendant gave evidence for the purpose of showing that the plaintiff's services were rendered as one of intestate's family, and not under a contract or in expectation of being paid for them.

The defendant submitted the following points :—

1. If they believe that plaintiff went to his uncle's when he was a boy fifteen years of age, and was educated, clothed and provided for by his uncle, and was a member of John Neel's family—treated as a son, receiving money from time to time as he called for it, and so continued to live, act and be treated as a member of the family, and no account being kept on either side, and receipt given or taken, then the plaintiff cannot recover.

2. The plaintiff, having failed to prove any express contract, no implied promise can in law arise under the evidence, and plaintiff cannot recover.

3. The Statute of Limitations bars all plaintiff's claim prior to six years before suit brought.

The court (Williams, J.) answered :—

"1. If the facts stated in this point correctly express the relationship between the parties, then the plaintiff would not be entitled to recover for the services which were rendered by him to the intestate, and for which this action is brought. But if there are other facts tending to show that the relationship was different from that indicated in the point—that is to say, if the evidence shows that it was the understanding of both parties that the plaintiff was to be compensated for his services, and to receive wages therefor, then the plaintiff may recover for his services what they were reasonably worth, although the parties may not have agreed upon a fixed or specific amount of wages.

"2. The court decline to charge as requested in this point—the testimony of William B. Neel and Harriet Dunn, if believed by the jury, is sufficient to enable the plaintiff to maintain this action.

"3. This point is affirmed."

[Neel's Administrator *v.* Neel.]

The verdict was for the plaintiff for $5500. The defendant took a writ of error. He assigned for error:—

1. That under the issue as made up on the record there was no evidence on which a verdict could be rendered for the plaintiff.

2 and 3. The answers to the defendant's 1st and 2d points.

*R. Woods,* for plaintiff in error.—The declaration is for an indebtedness of the administrator, not of the intestate. There was no evidence of an agreement that the plaintiff should receive wages; the question should not have been submitted to the jury.

*J. B. Large,* for defendant in error.

The opinion of the court was delivered, November 16th 1868, by

THOMPSON, C. J.—There is a well-defined line of decision in this Commonwealth, to the effect, that where a family relationship exists, for instance as between father and son or grandson, or uncle and nephew, or even more remotely, no implied promise to pay for services rendered in such relation between the parties arises. In such cases a contract, or express promise to pay for services, must be established in order to enable the claimant to recover, and the evidence ought to be clear and satisfactory, otherwise the services will be referred to the relationship. But when there is evidence of a contract, if it be unwritten, it is always for the jury to say whether it establishes the claim of the plaintiff or not.

In the case in hand, there was evidence of a promise by the intestate to pay wages to the plaintiff, if he would remain and manage the farm for him. No such contract existed when he first went to live with his uncle, but having grown to man's estate, he talked of leaving, as he had a perfect right to do, when, it is alleged, a promise to pay was made if he would remain, and it is in full proof that he remained and faithfully attended to the farm, as well as to other business of the intestate. One witness testifies that in 1856, the intestate represented to him that the plaintiff talked of leaving him, and requested the witness, the plaintiff's brother, to speak to him and prevail on him to remain. That he did so, and that he remained. The same witness further said, that in 1857, General Neel, promised to pay him wages, but did not say what he would give. Another witness testified that in 1864, she heard her grandfather, the intestate, tell the plaintiff he would give him $1500 a year, if he would remain on the farm with him. He did remain, although he had been then talking of leaving. Was this a promise to pay wages, or was it a testamentary promise? There was nothing to give any plausibility to the idea that it was the latter. The learned judge therefore left it to the jury to say from the testimony, whether there was a promise

[Neel's Administrator *v.* Neel.]

to pay wages. He fully admitted in his charge the defendant's position, that if the plaintiff occupied a mere family relation on the farm, no implied promise would arise to entitle him to recover. He also affirmed the plaintiff's position, that if the testimony showed that the family relation once existing had been changed to a contract to pay wages, the plaintiff would be entitled to recover. He could not do otherwise in the face of the testimony, although it was none of the strongest. Yet it was hardly possible to doubt that the original relation was changed, at least after 1857, taking the testimony to be credible, and certainly after the promises to the same effect in 1864, it was more easily to be credited.

No sum was fixed and agreed upon in any of these conversations when promises were made, if made at all. It therefore entitled the plaintiff to recover as for a *quantum .meruit*, if the testimony sustained it. And this he would be entitled to recover for services for six years anterior to the bringing of the suit; and so the judge submitted the case to the jury. As already said, we see not how the judge, without error, could have done otherwise. If the jury have given the plaintiff a large verdict, having found a promise to pay, we cannot correct it; nor could the court below, unless it considered it excessive. We see no error thus far—nor anything to complain of in the answer of the court to the defendant's 3d point.

We now recur to the 1st assignment of error, namely: That under the pleadings and issue, no verdict or judgment could be rendered for the plaintiff.

The exception results from a mere slip of the pleader in stating the promise to have been that of the administrator instead of the intestate. The case was tried throughout, as against the estate of the latter. Had the objection been made at the trial, an amendment would have been allowed at once. After verdict we will treat the *narr.* as amended in accordance with the evidence and trial. Seeing nothing wrong in the record, the judgment is affirmed.