HENRY ULRICH ET AL. v. HENRY L. ARNOLD.

ERROR TO THE COURT OF COMMON PLEAS OF LEBANON COUNTY.

Argued February 16, 1888—Decided April 30, 1888.

1. Though after marriage the services of a wife belong to her husband, yet if the wife, because of the absence of an express contract, may not recover for her services rendered to a parent, the husband can have no higher right to recover for them by an action in his own name: Patton v. Conn. 114 Pa. 183.

2. Loose expressions of an infirm parent, expressive of gratitude for the personal services of a child and of a desire that compensation should be rendered after his death, but not in the least degree indicative of the terms of a contract to pay therefor, are insufficient for submission to the jury from which to find whether or not such a contract existed.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY, J., absent.

No. 226 January Term 1888, Sup. Ct.; court below, No. 123 March Term 1887, C. P.

On February 19, 1887, an action of assumpsit was begun by Henry L. Arnold against Henry Ulrich, Daniel Ulrich, John Fox and Henry L. Arnold, executors of the will of Samuel Ulrich, deceased.

At the trial on December 9, 1887, it appeared that Samuel Ulrich, a widower, in 1874 came to Lebanon to reside in the family of the plaintiff, who was his son-in-law. Soon afterward he made a contract that he would pay the plaintiff $10 per month for his board and lodging. While so residing with the plaintiff's family Mr. Ulrich received an injury to his wrist, which subsequently produced serious and offensive sores, confining him to the house, his condition becoming gradually worse until he died in 1886. A portion of the claim of the plaintiff was a balance of $22.23 for board and lodging, in accordance with the contract referred to. This claim was not resisted. The remaining portion was for services rendered to Mr. Ulrich by the plaintiff's wife, his minor children and himself. The evidence consisted entirely of the proof of declarations of the deceased made in the presence of witnesses, relied upon to establish a contract to pay for the services. The character of this evidence fully appears in the opinion of the court.

The court, McPHERSON, J., charged the jury and answered the points presented as follows :

The principal facts in this case are not materially in dispute. The dead man, Samuel Ulrich, in 1874 came to the house of Mr. Arnold, the plaintiff, who had married Mr. Ulrich's daughter, and staid there for a couple of weeks, being then apparently in good health, able to work. After being there about that length of time, he said he wanted to pay for his boarding, and shortly after that time a contract was made to that effect. There is no dispute upon that subject ; and, as has just been said by the counsel for the defendants, they do not dispute that a contract was made for boarding for the amount of $10 a month ; and that there is two months' and a few days' boarding still due. So, in any event, your verdict will have to be for the plaintiff for that amount, which is $22.23, according to

one of the points; the whole, without interest, amounting to a little over $22.

However, he was injured—an accident happened to him—and thereafter he did no work as far as we heard, and I suppose he did none, but he continued, however, to be with the family, and you have heard the testimony in regard to the condition of his hand and wrist, the condition of himself, and the injury to his wrist as affecting his general health, his ability to walk about, what kind of attention he needed and how much care and nursing and general looking after became necessary. After the family moved from Lehman street over to Sixth street, and had resided there several years, the evidence seems to show that his condition got to be considerably worse. He died there in 1886. The evidence also shows that after he went to Sixth street he had a fall—perhaps had a seizure of some kind—I do not clearly know why—and was brought home in a wagon; and from that time on, the uncontradicted testimony is that he did not leave the house except in the immediate neighborhood of the house, as on the porch and in the yard—did not go out and walk about as he had apparently done before, to some extent.

Now, this suit is brought to recover compensation for the boarding which still remains unpaid, and also compensation for services rendered by Mr. Arnold himself, by his minor children, and particularly by his wife, during these years from 1874 to 1886 while Mr. Ulrich was at his home sick and required attention. The case, therefore, divides itself into two or three parts; but it is only as to one of them that there is any considerable difficulty. Mr. Arnold himself is entitled to be paid whatever the services which he himself rendered are reasonably worth. He is also entitled to be paid for whatever services his minor children rendered, such sum as they were reasonably worth. And the reason of that is, the relationship between a father-in-law and his son-in-law is not such as to raise any presumption that the son-in-law intends to give his own services to his father-in-law; if he does give services to his father-in-law, and the father-in-law accepts them, the presumption is that they are to be paid for at such price as they are reasonably worth; there is no necessity for proving an express contract between the parties; the law would imply a

contract, from the mere fact that the son-in-law rendered service, and the father-in-law accepted it. Of course that may be repelled by other proof intended to show that it was not intended that the service should be paid for; but I am not aware that there is such testimony in this case, and I do not understand it to be contended that there is such testimony in the case, so far as the personal service of Mr. Arnold is concerned, or the personal service rendered by his children.

We come, therefore, to the service rendered by his wife; and, as you see, that is the important part of the case; because it is conceded all round, and the testimony very clearly shows, that by far the larger part of the service rendered was rendered by her; and if, therefore, Mr. Arnold has no right to recover for the service rendered by her, the amount which he would be entitled to recover would be materially diminished.

Now her case stands upon this footing, as I conceive:—She was the daughter of Mr. Samuel Ulrich, and of course she continued to be his daughter; because, although she married Mr. Arnold, and went from her father's house, and went to live with her husband, the natural obligation which devolves upon a child to support a parent, an obligation recognized and enforced by the law, still remains; and so we may presume, and will presume, the high and natural affection existing between them, which would prompt her to render service to her father without any thought of payment. It is supposed, and has been argued to the court and to the jury, that because he went to live at their house as a boarder—that is, paying for his boarding—therefore he was there substantially as stranger. We do not so understand it. That did not alter the fact that between himself and his daughter there was this tie of blood; neither did it dissolve the tie of close affection. As we understand the law, it did not in any way give her right to charge for service rendered to him in the way of care and nursing. The fact that she is married, and that therefore her husband had a right to her services, does not at all interfere, as I understand it, with that view of the case. The husband, no doubt, has a right to command the service of his wife—he did have at least during the period covered by this case—and, if he did not desire that she should render service to her father, that was a matter within his own control, and

he, could have enforced it. If he did not desire that she should render service to her father, unless there was an agreement by which she should be paid for it, that also was a matter within his province, and he could have enforced it. If, however, he allowed her to render the service which a child would naturally render to a parent—nursing and caring for him when he needed nursing and being taken care of, without insisting that there should be a contract made for payment upon his part—we instruct you that she rendered it upon the footing of parent and child, and as a matter not to be paid for; and, therefore, the husband could not claim for such service as the wife rendered under those circumstances. In brief, to enable a daughter to recover from the estate of her father for services rendered to him in the way of care and nursing, there must be an express contract—that is to say, a contract made in words—either written words or spoken words—before she can set up successfully a claim for service of that kind rendered to her father; and it makes no difference, so far as that principle is concerned, that she be grown up and married, and be living away from her father. She herself, without an express contract, would have no right to recover under these circumstances; and neither would her husband, suing alone, have any such right, because he could not occupy any higher ground, or have any higher right, than his wife; and as she would have no right to recover for such service, neither would he. So we instruct you in this case that if you are not satisfied, and clearly satisfied, from the evidence, that there was an express contract between Mrs. Arnold and her father that she should be paid for such care and nursing as she should give to him, then Mr. Arnold cannot recover anything for any service which she rendered to her father. It is necessary that the jury should be clearly satisfied upon that point. If the evidence leaves them in doubt, they must find against her right to be paid, and, therefore, against her husband's right to to recover. It is, however, right—I will say this—to allow a child to recover for service which the parent has expressly promised to compensate; and it is not necessary in a case like that, that the price should be actually fixed. If the father expressly agreed to pay the daughter for such services as she might render, and suit was afterwards brought against his

estate, the price could be fixed, and in almost all cases would be fixed by the jury, that tried the case, and fixed at such sum as the jury thought under all the evidence the services rendered were reasonably worth.

So that you come to another question of the case, and one that has been argued to you quite fully; and that is, whether there was an express contract here to pay Mrs. Arnold for her services in nursing and taking care of her father. [That evidence consists of the declarations of Samuel Ulrich made at different times, beginning shortly after he was hurt and running down to within a short time before his death. Three or four witnesses speak of his declarations].[2] You will remember their testimony upon that subject, and must determine what weight to give it—what he said, and what he referred to. First determine what he said, and next determine what he was referring to; and then [see, from all the evidence, (which consists, as I remember, of these declarations,) whether or not there was an express contract between the father and daughter, that she should be paid for her services.][3] If you are not clearly satisfied upon that point, I repeat, she has no claim, and neither has her husband. The jury must be clearly satisfied not only that the father wanted to see her paid, and that he thought she had an equitable claim, or honest claim, for the work that she had done, but [the jury must also be clearly satisfied from all the evidence that there was an express contract made that she was to be paid for her services].[4]

[If you find that there was such a contract, then the question of compensation will arise],[5] and in what I say about the question of compensation, I refer also to such services as Mr. Arnold himself rendered, and his minor children. The same principles apply to himself, to his children, and his wife, if he can recover on behalf of his wife. . . .

The defendants' points are these:

1. The relationship of the parties is such that under the evidence the jury must find for the defendants.

2. The time which elapsed after the alleged claim accrued, and before any demand was made, is such that the presumption of law under the facts in this case is either that the wages have been paid, or that the services were performed on the footing that no payment was to be made, and the jury must find for the defendants.

3. Under the evidence in the case the verdict must be for the defendants.

Those points must all be refused. There are questions of fact in the case upon which the jury must pass. Although these points have been qualified since being handed to me, so as not to apply to the claim for boarding, which is now admitted, there are still other questions in the case upon which the jury must pass, viz.: upon Mr. Arnold's individual right, which I have sufficiently explained, and therefore I cannot give these instructions.

The verdict of the jury was in favor of the plaintiff for $2,022.30. On January 2, 1888, a rule for a new trial was discharged, the court saying:

The equity of this case is with the plaintiff, and we do not think any legal reason requires us to set aside the verdict. The question of an express contract between the decedent and his daughter, was fully recognized as of vital importance; it was argued to the jury by both sides, and we were not asked to say, that the evidence in its favor did not warrant its submission. If the verdict were unjust it would still be our duty to interfere, even under these circumstances, but upon the facts before us, we think the result is right. New trial refused, and judgment directed on the verdict upon payment of the jury fee.

Judgment having been entered, the defendants took this writ assigning as error:

1. The submission to the jury of the question as to whether there had been an express contract between the decedent and his daughter, Mrs. Arnold, upon the evidence adduced by the plaintiff.

2-5. The parts of the charge embraced in [ ] [2 to 5]

*Mr. Thomas H. Capp* (with him *Mr. George B. Schock* and *Mr. George B. Ulrich*), for the plaintiffs in error:

1. That the plaintiff has no higher standing than his wife, is conclusively ruled in Patton v. Conn, 114 Pa. 183, and Houck v. Houck, 99 Pa. 552. If the wife, owing to the absence of an express contract, may not recover, the husband can have no higher right. To enable the plaintiff to recover for the services of his wife, there must exist an express con-

tract, the evidence of which must be clear, direct, precise and unambiguous: Neale v. Engle, 5 Cent. R. 907.

2. The evidence adduced by the plaintiff falls very far short of the requirements which would justify submission to a jury. What services were to be rendered by Mrs. Arnold? How much was she to be paid? There is no evidence of any promise to pay, or of an acceptance of such a promise. The declarations of the deceased can be explained as expressions of gratitude, and of regret that his infirmities had made him troublesome, and they are consistent also with the theory that he intended to make a testamentary bequest in her favor. Such declarations may reach so far as to declare the sense of obligation and a settled purpose to compensate, but all this is insufficient to raise a promise: Walls' App., 111 Pa. 460; Graham v. Graham, 34 Pa. 475; Leidig v. Coover, 47 Pa. 534; McConnell's App., 97 Pa. 31; Horton's App., 94 Pa. 62; Larkin's Est., 16 W. N. 541; Pickens's Est., 14 W. N. 407.

*Mr. Josiah Funck*, for the defendant in error:

1. The evidence offered to prove an express contract was introduced without objection, and afterwards argued to the jury by the defendant's counsel as a matter to be considered and decided by them. It is too late to raise the question now. "Points not raised and passed upon in the court below, are not open for discussion in this court:" Spencer v. Kunkle, 2 Gr. 406. This court will only review the points made and adjudicated upon in the court below: Dorman v. Turnpike Co., 3 W. 126; Weaver's Est., 25 Pa. 434; Raush v. Miller, 24 Pa. 277; Garrett v. Jackson, 20 Pa. 331; Pickle v. McKissick, 21 Pa. 232. A court may not desire to run the risk of withdrawing a case from the jury, if not asked to do so; may the defeated party then have his case reviewed and the judgment reversed?

2. In Kidder v. Boom Co., 24 Pa. 193, the court below charged: "All that the law requires to constitute a contract is a benefit conferred by one party and accepted by the other as a matter of business and not as a gratuity, and with the assent or understanding that the one is to incur a debt or obligation and that the other is to be entitled to make a charge. When this is the case it is not necessary that the price should

be fixed, for the law will imply that he who performs the service shall receive as much as he reasonably deserves to have." This instruction was approved by this court, and it was said: "True, the contract must be express, but its existence must be shown by either positive or presumptive evidence." The evidence submitted in the present case justified the inference that such a contract existed, and it was therefore the duty of the court to submit it: Howard Exp. Co. v. Wile, 64 Pa. 205; Egbert v. Payne, 99 Pa. 239.

3. The court below, we think, committed a more glaring error in holding that under all the circumstances of this case, the plaintiff must prove an express contract to pay for the services rendered by his wife. The wife is the plaintiff's servant; her earnings were his, and the service which she performed stood upon the same footing as if it had been rendered by the plaintiff himself, or any other member of his family. It is submitted that Houck v. Houck, 99 Pa. 552, and Patton v. Conn., 114 Pa. 183, do not establish the doctrine laid down by the court. The relationship between a son-in-law and father-in-law is not of itself sufficient to overcome the legal presumption of a promise to pay what the services are reasonably worth: Schoch v. Garrett, 69 Pa. 144; Horton's App., 94 Pa. 62; Smith v. Milligan, 43 Pa. 107.

OPINION, MR. JUSTICE GREEN:

Having read with close attention the whole of the testimony in this case, we are constrained to say, that in our opinion there was no evidence of an express contract for the services of the plaintiff's wife, and hence there could be no recovery for that part of the plaintiff's claim. That Arnold had no better claim than his wife, for the value of her services, was ruled distinctly in Patton v. Conn, 114 Pa. 183, and in Houck v. Houck, 99 Pa. 552. In the former of these cases we said: "Although after marriage her services belong to her husband, yet, if the wife under the circumstances, owing to the absence of an express contract, might not recover, the husband can have no higher right." In the present case, therefore, the claim must be regarded precisely as if the action had been brought in the name and right of the wife.

Arnold's wife was the daughter of the deceased Samuel

Ulrich. In his will he made no provision for the payment of his daughter's services in nursing him, and during his life while living in the plaintiff's family he insisted upon paying, and made a special contract for the payment of, his boarding at ten dollars a month. He was scrupulously careful to make these monthly payments for a number of years, and down until a very short time before his death. For the small balance due for board, $22.23, the plaintiff is clearly entitled to recover, and as to that there is no dispute. It is thus apparent that the deceased was quite alive to the necessity of an express contract, with well defined terms, with reference to his boarding. Having this sense of his responsibility it might well be expected that if he really intended to make payment for the filial services of his daughter in nursing him, he would at least take some pains to define with certainty the limits of his obligation in that regard. And it would also be expected that if the son-in-law or the daughter intended to claim compensation in money for the filial services of the daughter in nursing her father during his sickness and his suffering, they would have made such demand, or at least expressed their intention to do so, or their desire for such compensation during the lifetime of the father. In point of fact there is not a shred of such testimony in this case. Not a witness has testified to the least expression of even a desire for compensation by the plaintiff or his wife at any time during the life of the deceased. The services in question were rendered during several years before Samuel Ulrich's death, and at times they must have been somewhat onerous and personally offensive. They were, however, merely such services as any daughter would naturally render, and indeed ought to render, to a sick parent residing under her own roof. So far as the plaintiff and his wife are concerned, no thought of claiming compensation for these services seems ever to have been expressed or entertained until after her father's death.

The case is, in truth, singularly barren of the usual loose expressions which are always relied upon in cases of this kind in support of the claim. There are very few of them, and they do not in the least degree indicate the terms of an express contract to pay for the services in question. The whole of the testimony appears in the following extracts: Alice Zwier, a

daughter of the plaintiff, testified that the deceased said in her presence, "'I am a great trouble'—he said he knew he made lots of trouble already, but after he was dead my father and mother should be paid good for it." And at another time— "He said his time was short; that he was a big trouble already, but after his death my father and mother should be paid good for the trouble they had." This was said not to the plaintiff or his wife, but to the witness, and there is no proof that either the plaintiff or his wife was present. It of course is fatally uncertain as to what the compensation was to be, or how or in what manner it was to be paid. As the payment was only to be after the testator's death the only inference that can be drawn is that he intended to make some testamentary provision for the payment. This was not done, and was no doubt disappointing, but as proof of an express contract to pay, the declaration has not the slightest significance, and is absolutely worthless.

John A. Arnold, a son of the plaintiff, testified in reply to a question as to what his grandfather had said about paying his father for services in nursing him as follows: "He said he would like if my father would get paid for his big trouble." Being asked to repeat the exact words he said: "He asked me, 'John are you here?' I said yes. 'Are the boys here?' Says I, No. Father wakened up and I asked him if I should write to them again. He said, no, they knew it and that was enough, and he would like to see that my father got paid for his trouble. . . . . He said until he was paid there is not much left any more."

Here also is an entire absence of any agreement to pay anything, merely the expression of a desire that the plaintiff might be paid. But whether for his own services or his wife's, whether during the life of the testator or after his death, whether by a testamentary provision or by the consent of the other children, and what amount—all are left in hopeless uncertainty. As to any specific agreement to pay any defined sum, of course these declarations are proof of nothing. Joseph Arnold, the plaintiff's brother, testified that in a conversation at one time with the testator he said, " Yes, but the great trouble I must make to Mrs. Arnold. And I said, well you can't help that; and I guess you will get good nursing, and he

said, yes, it could not be better.   He said it could not be better, and he said, 'it will all come right once.'   What he meant by that I didn't ask him."   It is unnecessary to say more than that this declaration proves absolutely nothing in support of the theory of a contract.

The only remaining witness was A. Stanley Ulrich, who testified that in a conversation with him the old man said, "Then he complained that the other children did not come to see him, but that quite likely after his death they would come, that he hadn't more than a few thousand dollars, and that after paying the funeral expenses he would not have enough left to pay Henry for the great trouble he had been to him."   This also was said, not to the plaintiff or his wife, but to the witness; no contract to pay anything during testator's life was indicated, no certain or fixed sum was expressed, or any means of ascertaining what the compensation was to be.   The services had all been rendered, as it was but a few days before the old man's death, and instead of being proof of any agreement to pay any sum whatever for the services, this declaration proves nothing more than the thought or belief that if a claim was made after his death and was allowed, it might require the most of his remaining estate to pay it.

The foregoing is absolutely all of the testimony upon which the claim of the plaintiff is based.   Instead of proving any defined, express contract, it disproves it.   There is not a single element of an absolute agreement in it.   It would be a weariness to review the cases in which we have condemned this sort of evidence, and it is quite unnecessary.   The requirements of the law, as long established in this commonwealth, in reference to claims of this character, are certainly not unreasonable, and they ought to be rigidly enforced.   Mere loose and rambling declarations of an aged and infirm parent expressing gratitude for the services of a child during a period of illness and of suffering, services which all right-minded children willingly render to their stricken parents, without thought of mercenary reward or expressing a desire that payment should be made for them, or the hope that compensation shall be rendered after death, are not a contract nor the evidence of one, between persons thus related.   It is at best but an ill-judged and misplaced sympathy which prompts juries to dignify such declarations and

expressions with the qualities of a positive and express contract. It is in derogation of our common humanity and of the best instincts of our race and ought never to be encouraged by the tribunals which administer justice. If, in any given case a child expects to be paid for filial services to an infirm parent, let him or her conform to the law, and enter into a specific and definite contract with the parent, during the parent's life, fixing the character of the service and determining positively the fact that compensation is to be paid for it. When this is done, the courts will see that the contract is enforced; when it is not done, claims for such services when presented as legal obligations do not deserve the slightest consideration. As it is error to submit to a jury a question of which there is no evidence, the assignments of error are all sustained.

Judgment reversed, and a new venire awarded.