# ELIAS ZIMMERMAN v. LEVI ZIMMERMAN.

### APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS OF DAUPHIN COUNTY.

Argued June 3, 1889—Decided June 28, 1889.
[To be reported.]

1. The law implies no contract to compensate for personal services rendered by a son to a father, but, even though at the time of rendering them the son was not a member of his father's family, the law exacts, as the basis of such a claim, proof of an actual contract, definite in its terms.

2. To support a claim for nursing or other services such as filial duty and common humanity require a son to render, there must be better proof than loose declarations of gratitude and of an intention to compensate, made by a father in his last sickness: Neel v. Neel, 59 Pa. 347; Titman v. Titman, 64 Pa. 480; distinguished.

Before PAXSON, C. J., GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 2 May Term 1889, Sup. Ct.; court below, No. 480 June Term 1887, C. P.

On May 25, 1887, Elias Zimmerman brought assumpsit against Levi Zimmerman, executor of the last will and testament of Samuel Zimmerman, deceased, to recover for personal services alleged to have been rendered by the plaintiff to the defendant's testator in his lifetime. The defendant's plea was non-assumpsit.

At the trial on May 15, 1888, the following facts were shown:

Elias Zimmerman, the plaintiff, was a son of Samuel Zimmerman, deceased. The latter resided upon a farm of which he was the owner. With the exception of one daughter, his children had all left his home, and his household consisted of this daughter, his wife, himself and one female servant. The plaintiff resided upon the same farm, but in a different house, across a lane from his father's residence. For some years prior to his father's death, the plaintiff had managed and cultivated the farm upon shares.

About January, 1883, Samuel Zimmerman, who was then an old man in feeble health, became worse, and from that time until his death, which occurred February 10, 1885, he required more or less attention and assistance. Sometimes he would fall and would have to be helped up, and after being confined to bed would need help when he desired to change his position. Frequently, on account of loss of control over his person, he would require attentions of a very disagreeable nature.

During the two years preceding his death, his son, the plaintiff, rendered to him such care and attention as the circumstances demanded, waiting upon him and caring for him, being often called in from the fields in day time to attend and clean him, and a large part of the time sleeping at night in his father's house, in order to be at hand and give him necessary attendance. In the mornings the plaintiff would clean him and wash his soiled clothing. The wife, son and hired hand of the plaintiff also sometimes took care of the deceased.

To establish that the services thus performed were rendered upon the footing of a contract, the plaintiff called several wit-

nesses. B. Frank Zimmerman, a son of the plaintiff, who was about thirteen years of age at the date of his grandfather's death, testified for the plaintiff as follows:

Q. Tell the court and jury, Frank, if you please, what occurred between your grandfather and your father, about the time your grandfather was taken sick? A. My grandfather asked father for water, and he said, " Come and attend to me, Elias, and you shall be paid—shall be well paid for what you do, if it takes all I have ; " and father said, " I will, and do all for you I can."

Q. Did you hear your grandfather repeat the same thing ? A. Quite frequently.

On cross-examination : Q. When was this, that the old gentleman said your father should attend to him and should be well paid? A. In the latter part of 1882 or the fore part of 1883.

Q. How long had your grandfather been sick before that time? A. Well, he may have been sickly a year.

Q. He may have been sickly a year? A. I would say six months before that; yes, sickly.

Q. Who had attended to him during these six months before this conversation took place that you speak of ? A. My father attended him, and sometimes I.

Q. I mean, now, during those six months before this talk occurred between your father and your grandfather? A. Yes, sir.

Q. Now what was it that was said when your father was present ? A. Grandfather asked him for water, and he said, " Come and get me water and you shall be paid for what you do, if it takes all I have ; shall be well paid if it takes all I have."

Q. And your father got him water, then? A. Yes, sir.

John F. Cassel, who worked for the plaintiff from 1880 to 1883, testified that on one occasion while the plaintiff was attending to the deceased, the latter said to him : " Li, you tend to me, and you shall be well paid for it." This witness testified further that he was frequently sent by the plaintiff to take his place at his father's house at night, and that the plaintiff's father, several times during the first three months of his illness, told the witness to go and bring the plaintiff and say to him

that he should be well paid, which the witness did, and in pursuance of these messages the plaintiff always came.

John P. Yorty testified that he worked for the plaintiff from March, 1883, to March, 1884; that one night when he was at Samuel Zimmerman's house, the latter sent the witness after the plaintiff, saying that " Eli was to be paid if it takes all that he had." Other witnesses testified to similar declarations. Mrs. Lizzie Haas testified that several times she had heard the plaintiff's father say he was paying Elias for attending to him.

A number of witnesses, called by the plaintiff, estimated the value of the services rendered by him to his father at about $1,200. There was no evidence that the plaintiff and his father had settled any account respecting the services in question, or that the former had made any demand upon the latter for payment therefor.

At the conclusion of the testimony the court charged the jury as follows:

In a case recently heard by the Supreme Court from this district, that court says:

" The requirements of the law, as long established in this commonwealth, in reference to claims of this character, are certainly not unreasonable, and they ought to be rigidly enforced. Mere loose and rambling declarations of an aged and infirm parent, expressing gratitude for the services of a child during a period of illness and of suffering, services which all right-minded children willingly render to their stricken parents without thought of mercenary reward, or expressing a desire that payment should be made for them, or the hope that compensation shall be rendered after death, are not a contract nor the evidence of one, between persons thus related. It is at best but an ill-judged and misplaced sympathy which prompts juries to dignify such declarations and expressions with the qualities of a positive and express contract. It is in derogation of our common humanity and of the best instincts of our race, and ought never to be encouraged by the tribunals which administer justice. If, in any given case, a child expects to be paid for filial services to an infirm parent, let him or her conform to the law and enter into a specific and definite contract with the parent during the parent's life, fixing the charac-

ter of the services and determining positively the fact that compensation is to be paid for it. When this is done, the courts will see that the contract is enforced; when it is not done, claims for such services when presented as legal obligations do not deserve the slightest consideration:" [Ulrich v. Arnold, 120 Pa. 170.]

In other cases that court has also decided that the evidence to show such contract must be clear, unequivocal, direct and precise. [Taking the testimony of the plaintiff, we are of the opinion that it does not come up to this standard. No witness, except perhaps Frank Zimmerman, testifies to the elements of an express contract between the parties, and when his youth at the time of the conversation to which he testifies is considered, it seems to us at least that the alleged contract is not made out by evidence of that clear and satisfactory character which the Supreme Court very properly requires. The other witnesses, aside from the testimony referred to, testified to nothing which would justify us in submitting the case to the jury, and even taking their testimony in connection with his, we think that the testimony in this case, except in volume, is no stronger than was the testimony produced in the case from which we have quoted. We therefore instruct you to render a verdict in favor of defendant.] [4]

The jury returned a verdict in favor of the defendant. Judgment having been entered thereon, the plaintiff took this appeal, specifying that the court erred:

1. In holding that there was not sufficient evidence of an express contract to submit to the jury.

2, 3. In withdrawing the case from the jury and giving binding instructions in favor of the defendant.

4. In giving the instructions contained in that part of the charge embraced in [ ] [4]

*Mr. S. J. M. McCarrell* (with him *Mr. David Flemming*), for the appellant:

1. There was abundant evidence of an express contract between the plaintiff and his father, which the jury should have been permitted to consider. They lived in separate houses and had different homes. That the plaintiff was conducting

the farm, shows that their dealings were upon a business basis. The repeated declarations of the father show that he regarded the plaintiff as his servant in the matter of nursing and attending him, and was to pay for the service; and the uncontradicted evidence is that the father, at the commencement of his sickness, requested the son to care for and attend him, promising that he should be well paid, and the son agreed to do as he was requested.

2. The case is thus widely different from Ulrich v. Arnold, 120 Pa. 170, relied on by the court below as an authority for giving the jury binding instructions. In that case, there was no evidence whatever that the claimant and the deceased had ever talked of compensation. This difference was not lost sight of by the court below, and the testimony of Frank Zimmerman was virtually conceded to establish a contract, but on account of the youth of the witness and the doubt of the court as to the correctness of his recollection, the case was withdrawn from the jury. This was error; the credibility of the witness and the accuracy of his recollection, no matter what his age, were solely for the jury. And he was strongly corroborated by Cassel.

3. The degree of weight to be given to the testimony is for the jury, not the court, and it is not requisite that it be sufficient to produce a conviction of absolute certainty: Ott v. Oyer, 106 Pa. 17; Longenecker v. Railroad Co., 105 Pa. 328; Cake v. Bank, 86 Pa. 303. In Neel v. Neel, 59 Pa. 347, testimony no stronger than that given in the present case was submitted to the jury, and this court said that the trial judge could not have done otherwise without error. The case last cited was approved and followed in Titman v. Titman, 64 Pa. 480. The learned judge in the case at bar appears to have entirely lost sight of the testimony corroborating that of Frank Zimmerman.

4. The charge of the court clearly shows that this case was ruled entirely upon the decision in Ulrich v. Arnold, 120 Pa. 170, which had been published but a very short time before the trial. The facts of that case were very different from this. Ulrich was living in the family of Arnold, his son-in-law, and was paying a stipulated sum for boarding, which until a few weeks prior to Ulrich's death, was accepted by Arnold, without any suggestion or claim that it was insufficient to compensate

him. Here the parties were not living together; nothing was being paid for board, and the services were rendered by a son who was obliged to absent himself from his own home and business for that purpose. We have already shown that the two cases differ in that here we have evidence of an express contract, which was wanting in Ulrich v. Arnold.

*Mr. Josiah Funck*, for the appellee:

The declarations of the father that the son should be paid for his services, or that he was paying him therefor, when gauged by the rule of law, have no significance whatever. The son was performing but a natural duty enjoined by humanity, and which should have been prompted by affection. The decedent was not required to receive these services gratuitously. He could compensate his son for them, if he desired to do so, either by the payment of a sum of money or other equivalent, just as a parent may make a present to a child; or he could bind himself to pay for them by a contract which the law would enforce, if the evidence of it was clear, certain and indubitable, and the terms thereof so clearly fixed that there could be no room for misapprehending the parent's intentions. This doctrine has been repeatedly asserted by this court: Candor's App., 5 W. & S. 513; Mosteller's App., 30 Pa. 473; Hack v. Stewart, 8 Pa. 213; Leidig v. Coover, 47 Pa. 534; Lynn v. Lynn, 29 Pa. 369; Wall's App., 111 Pa. 460; Graham v. Graham, 34 Pa. 475; Ulrich v. Arnold, 120 Pa. 170.

OPINION, MR. CHIEF JUSTICE PAXSON:

This belongs to a class of cases which unfortunately are becoming too frequent. It was an action brought below by the plaintiff against the executor of his father's estate, to recover compensation for the care and nursing of his aged father for the last two years of his life.

It appears that the plaintiff and his father lived upon the same farm, though occupying separate houses a few feet apart. The farm belonged to the father, the son worked it as tenant. For the last two years or so of his life, the old man became feeble and required more or less attention; sometimes would fall down and his son would have to be called in to help him; he had little control of his bowels or urine, and needed to be

helped when he wanted to move about or change his position. The plaintiff was occasionally compelled to remain at his father's house all night, in order to take care of him. There is no doubt he performed many duties to his father, some of which were disagreeable. This, however, was a duty which he owed to his father, and was but a return for like duties rendered him in his infancy by his parents. The law regards such services as but the performance of a filial duty, which every man owes his parents, and implies no contract for compensation therefor. A recovery may, of course, be had upon an express contract, and this is what was attempted in this case. The learned judge below was of opinion that no express contract had been proved, and gave the jury a binding instruction to find for the defendant. This is the matter of which the plaintiff complains.

The testimony did not prove a contract in the clear and unequivocal manner required between parent and child. It was vague and uncertain, and consisted of loose declarations of the testator. As a specimen, and it is perhaps the strongest one I can select, I will refer to the testimony of Frank Zimmerman, a son of the plaintiff: "Q. Now what was said when your father was present? A. Grandfather asked him (plaintiff) for water; and he said, 'Come and get me water and you shall be paid for what you do, if it takes all I have; shall be well paid if it takes all I have.'" The witness was seventeen years old at the time of the trial. The conversation occurred in 1883. There were several other witnesses examined, and the scope of their testimony was that the testator had declared that if the plaintiff would take care of him he should be well paid.

All this is very unsatisfactory. It would be so, to prove a contract between strangers, and it does not measure up to the standard required between parent and child. Such loose declarations can always be proved in a contest between a man and his father's estate. In Leidig v. Coover, 47 Pa. 534, it was held that the declarations of a testator that his daughter should be paid for what she had worked over age, are not sufficient evidence of a contract as would enable her to recover; nor was it material that during a part of that time she had resided away from the homestead upon another farm belonging

to him. In that case it was said by Mr. Justice AGNEW: "The declarations of a parent may admit the filial devotion and real worth of his child, and the profit he may derive from her services. They may reach farther and disclose his own sense of obligation and his settled purpose to compensate. But all this is insufficient to raise a promise." This is in the direct line of our cases. See Candor's App., 5 W. & S. 513; Hertzog v. Hertzog, 29 Pa. 465; Mosteller's App., 30 Pa. 473; Hack. v. Stewart, 8 Pa. 213; Lynn v. Lynn, 29 Pa. 369; Ulrich v. Arnold, 120 Pa. 170. In Candor's Appeal, supra, it was said by Justice ROGERS: "In Walker's Estate we took occasion to express our reluctance with which we listen to claims for wages by a son against the estate of a deceased parent, and subsequent experience has not changed or modified the opinion then entertained. It is pregnant with danger, as we verily believe, as well to the rights of creditors as to the other heirs, and cannot, of course, be entitled to countenance from the court, unless accompanied with clear proof of an agreement not depending upon idle and loose declarations, but on unequivocal acts of the intestate, as, for example, a settlement of an account, or money paid by the father to the son as wages, distinctly thereby manifesting that the relation which subsisted was not the ordinary one of parent and child, but master and servant." The cases cited by the plaintiff do not conflict with this view. Longenecker v. Penna. R. Co., 105 Pa. 328 and Ott v. Oyer, 106 Pa. 6, have no bearing upon the case; while in Neel v. Neel, 59 Pa. 347, and Titman v. Titman, 64 Pa. 483, a contract much more distinct in terms had been proved. The amount of compensation was shown in each case.

There was nothing of the kind in the case in hand. How much was to be paid, when and for what services? Nothing of this kind appears. And it is one of the remarkable facts, incident to this class of cases, that the claim for compensation is seldom or never presented to the decedent during his life, but is always left to vex his legal representatives and heirs after his death. It is not too much to say that this testator, who was the owner of a small estate, would probably have been astonished had his son presented a claim before his death of $1,200 for his services for the two years preceding. Where a

contract of this nature is expressly proved, both as to the nature of the services and the amount to be paid, or can be shown by circumstances which are unequivocal in their nature, such as the settlement of accounts, it is all very well. A man has a right to do what he will with his own. But when a son seeks to recover compensation for such services as his filial duty and common humanity require him to render his aged parent, he must come here with some better proof than loose declarations of gratitude and of an intention to compensate, made by an old man in the extremity of his last sickness.

Judgment affirmed.