Nichols, C. J.
Plaintiff in her second amended petition alleges that in July, 1899, she, being ten years of age, was taken from the children’s home *257 in Allen county by defendant and placed in defendant’s family as a servant, and that in July, 1903, defendant promised and agreed to pay plaintiff the sum of $500 and furnish her clothing and board provided she would remain in his family until she reached her majority; that she performed her part of the contract and remained with defendant’s family until she arrived at the age of eighteen; that during all of said time she performed work and labor in the hay, wheat and corn fields, cared for defendant’s children and attended to her household duties. Alleging that no part of said sum had been paid she asked judgment therefor.
Defendant, answering this petition, averred that the plaintiff entered his home as a member of his family and continued and remained a member of and part of defendant’s family until after she reached her majority, and was accepted as such, being provided in common with his own children the necessities of life, and that both plaintiff and defendant during all of said period performed such reciprocal duties and obligations devolving on them and each of them incident to the family relation and without expectation of compensation, other than participation in the benefits that accrued to her as a member of the family and household of defendant. Defendant specifically denied that he at any time agreed to pay plaintiff the sum of $500 for any service she might perform or any other sum whatever. Verdict was had for the full amount claimed in the petition.
*258 The court of appeals reversed the judgment of the common pleas, whereupon the plaintiff in error prosecuted error to the supreme court of Ohio, seeking a reversal of the judgment of the court of appeals and a reinstatement of the judgment of the court of common pleas.
The evidence clearly shows that the plaintiff in error, although unrelated to the defendant Ditzler, was nevertheless a de facto member of his family, enjoying and sharing the comforts of the Ditzler home and assisting in the household duties in all their detail, and she therefore comes within the rule established in Ohio in the first proposition of the syllabus of Hinkle et al., Exrs., v. Sage, 67 Ohio St., 256, and cannot recover for services so rendered while a member of the family in the absence of an express contract upon her part to perform the services for compensation and upon the part of Ditzler to accept and pay for such services.
The court of appeals of Allen county reversed the judgment of the court of common pleas for two reasons, closely corelated.
First. Because the court, although requested by the defendant below, refused to give the following special charge to the jury: “If it shall appear that the plaintiff was a member of the family of the defendant from about the first day of July, 1903, until she arrived at the age of eighteen years, performing during such time ordinary services as a member of such family for and in behalf of the defendant and his family, no obligation to pay for such services will be implied and *259 she can not recover therefor unless it be established that there was an express contract upon the one side to perform the services for compensation and upon the other side to accept such services and to pay therefor and such contract may be in writing or it may be verbal, and it may be proven by direct or indirect evidence, but to enable the plaintiff to recover the contract must be established by clear and unequivocal proof.”
Second. Because the court in its general charge to the jury stated that plaintiff might recover, providing she had proven, by a preponderance of the evidence, the contract in its terms, as set forth in the petition, and that she performed her part of the contract and that the defendant agreed to do the things she alleged in her petition and that he has failed so to do.
The refusal to give the special charge would be logically followed by giving the law as contained in the general charge. The point in dispute has to do with the applicability to the facts in the case at bar of the second proposition of the syllabus of Hinkle et al., Exrs., v. Sage, supra, and, if applicable, counsel for plaintiff in error now challenges the soundness of the doctrine of such second proposition, which reads: “Such contract may be in writing or it may rest entirely in parol, and it may be proved by direct or indirect evidence; but to entitle the plaintiff to recover, the contract must be established by clear and unequivocal proof.”
First. It is contended that the doctrine of the Hinkle case, wherein it would require an express contract, even if in writing, to be clearly and un *260 equivocally proven, is placing an unwarranted burden on the complainant.
Second. It is further contended that if the contract be express but in parol, it is sufficient for the purpose of the proper administration of justice to employ the phrase “clear and convincing”' rather than “clear and unequivocal” as to the degree of proof.
Third. The claim of nonapplicability of the law of the Hinkle case to the case at bar is based on the fact that in the Hinkle case the suit for services was had' against the executors of an estate of a deceased person, while in the case at bar the party in whose behalf the services were rendered defends in person.
With respect to the first contention it must be conceded that it is not without merit. The term “unequivocal” is defined to mean, among other things, “without doubt,” “clearly demonstrated,” “free from uncertainty.” It implies proof of the highest possible character, equaling, if not exceeding, the proof required of the state in a criminal proceeding. It imports proof of the nature of mathematical certainty — something that in human affairs is all but impossible to obtain.
In the ordinary civil case the degree of proof, or the quality of persuasion as some text-writers characterize it, is a mere preponderance of the evidence. Indeed, the supreme court of Ohio, in The C., H. & D. Ry. Co. v. Frye, 80 Ohio St., 289, reversed a judgment of the lower court in that the trial judge charged the jury “that unless the party *261 upon whom the burden rested has satisfied your minds by a preponderance of the evidence recovery could not be had,” the supreme court holding that such instruction imposed a degree of proof greater than a mere preponderance.
In criminal cases in all civilized countries the degree of proof is enhanced beyond that of civil cases in the degree that the state has a more jealous concern for the lives and liberties of its inhabitants than it can possibly entertain for property rights. The burden of all such prosecutions is to prove every essential element of the crime beyond a reasonable doubt. There is, however, a well-recognized intermediate degree of proof required in a certain class of cases — a stricter standard, generally termed “clear and convincing” — cases where the charge of fraud is involved; proving the existence of a lost or spoliated will; an agreement to bequeath by will; mutual mistake sufficient to justify reformation of an instrument; engrafting of trusts; establishment of an equitable mortgage out of deed absolute on its face, and kindred questions.
This tendency of courts to employ in the. exceptional civil case more emphatic terms than “clear and convincing” is criticised by many standard writers on the subject of evidence. Wigmore, for instance, says, volume 4, section 2498: “The chief topic of controversy has been whether in certain civil cases the measure of persuasion for criminal cases should be applied. Policy suggests that the latter test should be confined to its original field, *262 and that there ought to be no attempt to employ it in any civil case.”
It would seem that in cases of the nature suggesting a higher degree'of proof than that characterized as a mere preponderance, the ends of justice would be best met by the use of the phrase “clear and convincing.” Any greater burden in civil cases of the peculiar nature justifying such requirement of a higher degree of proof than a preponderance would work a hardship and injustice.
We are constrained to think that if the attention of the court, when it was announcing the rule in Hinkle et al., Exrs., v. Sage, supra, had been directed to the obvious distinction between a claim against a deceased person and one against a living person, able to testify and assist in the preparation of his defense, the proposition as to the degree of proof declared in the second proposition of the syllabus would have been modified. We feel it our duty now to make the modification indicated.
The second contention, that if a contract for services rendered by one member of a family to another of the same family be in writing, then the reason requiring any higher degree of proof than a mere preponderance no longer obtains, is also of force.
If a father wishes to reward a faithful daughter for the sacrifice of the best years of her life in filial devotion and, not content with loose expressions of gratitude and promise to pay, reduces his desires to writing and thereby solemnly agrees to pay for the daughter’s services, why such an ex *263 press contract should be supported by proof of a higher character than that employed in the ordinary civil action is difficult to understand.
It is no answer to the proposition that services of this character should not be prompted by avarice or any expectation of reward and that motives of affection and duty should prompt their performance. The law fosters and protects the domestic relation; puts it on a high plane of dignity when it says that services rendered between members of the same family shall be presumed to be.gratuitously rendered even though such services may be performed at the express request of the person receiving the benefit. Such services are too sacred to be commercialized into a contract to pay by implication. But there is no sound reason calling for a rulé that one member of a family may not contract in writing to pay another member of that family for services of such a nature, and a contract so made and performed ought not to be burdened with any peculiar degree of proof for its enforcement. It is just as proper that a man should be allowed to make his own contract as it is that he should make his own will. There being, however, the legal presumption that such services were rendered gratuitously, theoretically the evidence to overcome the presumption, even if the contract be in writing, must be clear and convincing; but practically, since the evidence of the intention of the parties has been reduced to writing, the writing itself furnishes the proof of the degree characterized as clear and convincing and satisfies the requirements of the law in this respect.
*264 It is urged by counsel for defendant in error that since the second proposition of the Hinkle case, supra, makes no distinction as to the defense being made by a living person party to the contract as against a defense by one’s personal representative, the trial court was bound by the law of that case and should have given the special instruction, since it conforms in all respects to the law of that case. It can be said that, where the facts are substantially similar, the inferior court must yield its convictions if antagonistic to the law as defined by the court of last resort, but if the controlling facts are not the same there is no such duty laid on the trial judge. It must be admitted that the second proposition of the syllabus in the Hinkle case makes no distinction as to degree of proof between the defense of the living and the dead, and a consideration of the office of a syllabus and its binding force would be suggested. A syllabus is the law of the case establishing principle and doctrine, binding alike on citizens and courts, both inferior and of equal rank. The primary inquiry should be: Are the facts substantially similar? And if not, Is the reason that would impel the establishment of the rule of proof the same in the one instance as the other ?
In the case of Admrs. of Gavit v. Chambers and Coats, 3 Ohio, 495, the court say: “No maxim of jurisprudence is of more'universal application than that where the reason is the same the law should be the same,” and in the case of Orr v. Bank of the United States et al, 1 Ohio, 36, the old Latin *265 maxim, Anglicized, is employed: “When the reason of the law ceases the law itself ceases.”
In the case of Williams v. Roberts et al, 5 Ohio, 35, Hitchcock, J., says: “The principal reliance of the counsel for the complainant is upon case of Tiernan v. Beam, etc. As before remarked, we believe that case to have been correctly decided, and we should feel ourselves bound by its authority. But we are unwilling to extend it beyond a case similarly situated.
In the opinion of Davis, J., in the Hinkle case, supra, eight authorities of other jurisdictions are cited as supporting the doctrine there established, and an examination of those cases develops the fact that without exception the action was defended by the personal representatives of a deceased person. No case is there relied on, nor is there any cited to the court in the case now under consideration, establishing the doctrine of the Hinkle case as to degree of proof where defense in an action for recovery for personal services by one member of a family, against another member is made by a living person. Moreover, the reasons advanced for the establishment of this doctrine do not obtain where both parties to the action are living persons. Those reasons are that “Cases of this kind are odious and are not favored by the courts because they afford opportunity for fraud against the estates of deceased persons and great temptation to perjury, by disappointed or avaricious relatives.” Hinkle case, supra, page 262.
In Candor’s Appeal, 5 Watts & Serg. Rep., 513, 515, Rogers, J., says: “In Walker’s Estate, we took *266 occasion to express the reluctance with which we listen to claims for wages by a son against the estate of a deceased parent, and subsequent experience has not changed or modified the opinion then entertained. It is pregnant with danger, as we verily believe, as well to the rights of creditors as to the other heirs.”
In Zimmerman v. Zimmerman, 129 Pa., 229, it is held: “To support a claim for nursing or other services such as filial duty and common humanity require a son to render, there must be better proof than loose declarations of gratitude and of an intention to compensate, made by a father in his last sickness.” Similar observations will be found in all the cases touching on the point in question.
The court is of the opinion, therefore, that the trial judge, in view of the facts developed in the case at bar, was justified in -declining to follow the rule of the Hinkle case, supra, and was correct in his view of the law when he declined to give the special instruction and in limiting the degree of proof to the requirement of the ordinary civil action.
The first proposition of the Hinkle case, supra, is approved as the law of Ohio in all its vigor.
The second proposition of the syllabus should be limited in its application to cases where the defendant is the representative of a deceased person, and it is suggested that employment by the judge in charging jury of the term “clear and convincing” would be happier than “clear and unequivocal.”
*267 Attention is called to the fact that the court in its very latest utterance on the subject employed the standard term “clear and convincing” in a case of a nature that would demand the highest degree of proof available in a civil case. See Spengler v. Sonnenberg et al., 88 Ohio St., 192, the third proposition of the syllabus reading: “Where the express authority of an agent to sign an agreement in writing for the sale of lands rests in parol, the proof must be dear and convindng not only of such parol authority, but also that the authority was such as to permit the inclusion of all of the material terms which are embodied in the instrument.”
We think that a due regard for the recognized value of uniformity in legal rules requires us to point out the incorrectness in the use of the word “unequivocal.”
The term “clear and convincing” has come to have a well-defined meaning with the bench and bar. It indicates a degree of proof required in civil cases such as we referred to less than the degree required in criminal cases, but more than required in the ordinary civil action.
The needless multiplication of words in explana-' tion to a jury of the degree of proof required in a cause in hearing instead of assisting often operates to mislead and confuse. Experience of two centuries clearly indicates that in the ordinary civil cases the degree of proof be characterized as “a preponderance,” in the exceptional civil case of the type hereinbefore indicated it should be “clear and convincing,” and in the criminal case “beyond a reasonable doubt.”
*268 The judgment of the court of appeals must in consequence be reversed and that of the common pleas affirmed.

Judgment reversed.

Johnson, Donahue, Wanamaker, Newman, Jones and Matthias, JJ., concur.