## Fuller *v.* Stewart Coal Co., Appellant.

*Negligence—Master and servant—Safe place to work—Safe tools —Dangers—Notice or knowledge—Instructions.*

1. An employer is in duty bound to furnish his employees a reasonably safe place to work, and reasonably safe tools and appliances.

2. Where an employer knows that accidents of a particular kind have repeatedly happened, owing to the character of the place or of the appliances used, it is his duty either to correct the defects causing them or to give notice thereof to his employees, so that they may guard themselves against such accidents.

3. An employer is bound to take notice of these matters. An employee, without actual knowledge thereof, is only required to guard against dangers which he has reason to anticipate or regarding which he has been advised.

*Appeals—Review—Binding instructions—Evidence.*

4. In determining whether or not binding instructions should have been given by the court below all the evidence and inferences therefrom, favorable to the opposite party, must be taken as true, and all unfavorable to him, if depending solely upon testimony, must be rejected.

Argued September 29, 1920. Appeal, No. 94, Oct. T., 1920, by defendant, from judgment of C. P. Jefferson Co., Aug. T., 1916, No. 127, on verdict for plaintiff in case of C. G. Fuller v. Stewart Coal Co. Before BROWN, C. J., STEWART, MOSCHZISKER, FRAZER, WALLING, SIMPSON and KEPHART, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before CORBET, P. J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff for $2,500. Defendant appealed.

*Errors assigned* were as stated in the opinion of the Supreme Court, quoting the record.

*W. C. Miller,* with him *Wm. T. Darr* and *H. B. Hartswick,* for appellant.—Without evidence that the curve in the track was unusual and not of the character ordinarily in use, and that it was dangerous to make use of the curve under the circumstances, the jury had no right to determine whether or not this curve was dangerous, and return a verdict against defendant on the theory of the dangerous condition of the curve: Stark v. Lancaster E. L., H. & P. Co., 218 Pa. 575; Same v. Same, 225 Pa. 390; Aument v. Tel. Co., 28 Pa. Superior Ct. 610.

The test of liability is negligence and negligence cannot be imputed to defendant from the employment by it of the methods or machinery in general use: Reese v. Hershey, 163 Pa. 253; Higgins v. Fanning, 195 Pa. 599-602; Cunningham v. Bridge Works, 197 Pa. 625; Reeder v. Coal Co., 231 Pa. 563; Clark v. Coal Co., 259 Pa. 262; McLean v. Schoenhut Co., 225 Pa. 100; Clark v. Foundry Co., 219 Pa. 426; Walsky v. Coal Co., 262 Pa. 4.

*Cadmus Z. Gordon,* with him *W. N. Conrad,* for appellee.—The injury to Fuller was the natural and probable consequence of the negligence of the mine officials in

maintaining a dangerous place and in failing to warn him of the danger and in failing to instruct him how to act in order to avoid injury therefrom; the injury was such a consequence as under the surrounding circumstances of the case might and ought to have been foreseen by defendant's officials as likely to flow from their act and omission: Hoag & Alger v. R. R., 85 Pa. 293; Wood v. R. R., 177 Pa. 306; Roach v. Kelly, 194 Pa. 24; Boyle v. Breakwater Co., 239 Pa. 577.

OPINION BY MR. JUSTICE SIMPSON, December 31, 1920:

The only point raised by the assignments of error in this case is whether or not appellant was entitled to an instructed verdict either (1) because the probata and allegata did not agree; or (2) because the evidence did not show defendant was negligent; or (3) because it did show plaintiff was negligent.

The statement of claim avers plaintiff was an employee of defendant, which owns and operates a bituminous coal mine, the haulage-way exit from which was upon a grade necessitating the use of brakes, and curved so sharply as to frequently cause the bumpers of the cars rounding the curve to pass each other and become interlocked, whereby the cars were thrown from the track; that at this place the roof was so low that it compelled employees riding on the cars to crouch down lest they be struck on the head, and the haulage-way itself was so narrow the cars ran close to the coal on the one side, the other side being obstructed by rocks, mine debris and other materials; that because of the grade, curve, low roof and narrow and obstructed passageway, the danger of injury to those employed in bringing out the loaded cars was very great, and it was, therefore, defendant's duty to warn them of such danger and to instruct them how to avoid injury likely to result therefrom; that plaintiff received no warning or instruction, though he was wholly without experience in such occupation, never having worked at it until the day of the

accident, at which time he was directed to act as a brakeman on thirty-seven cars being brought from the place where the coal was mined, and to separate them between the twentieth and twenty-first cars, bringing the first twenty out of the mine and leaving the others therein; that while engaged in so doing, and because of the above defects, the bumpers interlocked, the cars were thrown from the track and "by reason of the unlawful conduct and negligence of the defendant" he sustained the injuries for which he claimed damages. It is clear this states a good cause of action, and since the evidence produced at the trial tended to prove the facts averred, we cannot sustain the complaint that the allegata and probata did not agree.

This conclusion also answers the assignments which allege the court below erred in not affirming defendant's points for binding instructions on the questions of negligence and contributory negligence; for "all the evidence and inferences therefrom favorable to plaintiff must be taken as true, and all unfavorable to him, if depending solely upon testimony, must be rejected": Wiles v. Emerson-Brantingham Co., 267 Pa. 47.

Moreover it further appeared that the interlocking of the bumpers at the curve referred to, and the throwing of the cars from the track by reason thereof, was a frequent occurrence, due to the fact that the bumpers were too small or the curve too sharp, and hence, instead of the bumpers striking each other when the cars came together, as they should have done, they passed by each other, struck the end of the adjoining car, became interlocked, and thereby one or both of the cars were thrown from the track when the train straightened out after passing beyond the curve. The evidence showed this sometimes happened as often as once a day and sometimes as infrequently as once a week, either of course being sufficient to affect defendant with constructive notice of the danger as it had continued for months. Indeed the defense was built around the fact that the operation was

dangerous in the respect stated, if the rear cars were not so braked as to cause them to drag and not press close up to those immediately in front, or "if the motorman would stop the motor a little too soon," thereby jarring the bumpers so they would pass each other; defendant's foreman admitting there was danger "if there was a slight error in braking and a slight error in the driving of the motor." To avoid this defendant said it was necessary to set the brakes on the last eight or ten cars, and that plaintiff had been warned of this necessity, in compliance with its duty to him (Zeskie v. Penna. Coal Co., 241 Pa. 183), and as an additional precaution he was told to ride only on the rear car. These allegations he denied, and said also he did not know of the dangers; and the jury by their verdict have conclusively determined all these matters in his favor. It is difficult to understand why defendant—which was in duty bound to supply plaintiff with a safe place to work and with suitable tools and appliances to work with (Lillie v. American Car & Foundry Co., 209 Pa. 161; Reilly v. Reilly, 264 Pa. 103; McGrath v. Atlantic Refining Co., 264 Pa. 345)—did not increase the size of the bumpers or flatten the curve (as the evidence shows could have been done), so as to make sure the bumpers could not pass each other and become interlocked. Apparently it preferred to rely on its alleged warnings to escape liability, though this did not relieve its employees from the risks, easily avoided, of the "slight errors" which resulted in the frequent derailings of the cars. Under these circumstances the question of defendant's negligence was one for the jury.

As already pointed out, plaintiff testified he had no knowledge of this danger, had received no warning in regard to it, and did not know there was any safer place to ride than between the twentieth and twenty-first cars, where he had been told to cut the train apart when at or near the curve. If his evidence be true, it is doubtful whether or not the obstructions to which he testified would not have prevented him otherwise reaching the

point where the cut was to be made; but whether they would or not, the jury have found he had no reason to anticipate danger, and had not been advised of its existence; and therefore he could not be held, as a matter of law, to be guilty of contributory negligence.

The judgment of the court below is affirmed.