# Davis, Director General, *v.* Carroll-Porter Boiler & Tank Co.. Appellant.

*Evidence—Admissibility—Identification of papers — Witness — Objection—When premature.*

1. Where papers are handed to a witness for identification, an objection that they are not admissible in evidence, .is premature; it should be made when they are offered for that purpose.

*Appeals—Judgment n. o. v.—Evidence—Inferences.*

2. In determining whether or not judgment should be entered non obstante veredicto, all the evidence, and inferences therefrom, favorable to the party having the verdict, must be taken as true, and all unfavorable to him, if depending solely upon testimony, must be rejected.

*Corporation—Principal and agent—Scope of employment—Repudiation of agreement—Retaining benefit.*

3. Where a corporation knows that one of its employees is attending to all matters connected with a certain branch of its business, it is bound by all he does within the apparent scope of his employment.

4. A party cannot repudiate an agreement entered into by one of its employees, and at the same time retain a benefit arising therefrom.

*Common carrier—Notice to consignee—Storage of cars pending convenience of consignee—Notice to carriers—Estoppel—Demurrage.*

5. Where a carrier gives notice to a consignee that it has cars ready for delivery, and they are stored by the carrier because the consignee is not prepared to receive them at that time, the duty is on the consignee to notify the carrier when he is ready to receive them.

6. Where a consignee has received, without objection, and has acted on a certain form of notice of the arrival of cars consigned, he cannot, without prior notification to the carrier, be heard to complain thereafter, on suit for demurrage, that the notices did not strictly comply with the requirements of a rule on the subject.

*Common carriers—Delivery—Payment of charges—Agreement between consignor and consignee.*

7. Ordinarily a carrier is not obliged to deliver goods consigned without payment being made for their carriage.

8. A carrier is not bound by any agreement between a consignor and consignee in relation to goods consigned.

*Practice, C. P.—Trial—Points—Demurrage—Contract—Signing or ratifying.*

9. A point asking for binding instructions for defendant, because of a lack of evidence on one point in a case, is properly refused, if plaintiff could recover upon any other ground.

Argued October 12, 1922. Appeal, No. 200, Oct. T., 1922, by defendant, from judgment of C. P. Allegheny Co., July T., 1919, No. 1502, on verdict for plaintiff, in case of James C. Davis, Director General of Railroads, operating the Pennsylvania Railroad Co., v. Carroll-Porter Boiler & Tank Co. Before FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Assumpsit for demurrage. Before SWEARINGEN, J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff for $2,600. Defendant appealed.

*Errors assigned* were ruling as to evidence and instructions, appearing by opinion of Supreme Court, quoting record, and refusal of judgment n. o. v., quoting order.

*Gifford K. Wright,* of *Alter, Wright & Barron,* for appellant.—Plaintiff has not sustained the burden on it of establishing either that Mr. Welfing had authority from

the corporation to execute the agreement in question, or that the company itself held him out to the world as having such authority: Slease v. Naysmith, 14 Pa. Superior Ct. 134; Weldon v. Traction Co., 27 Pa. Superior Ct. 257; Putnam v. Oil Co., 272 Pa. 301.

Defendant is not liable for demurrage when it is not the consignee of the shipments: Miner & Norwich, etc., R. R., 32 Conn. 91; Grove v. Brien, 8 How. 429; Dart v. Ensign, 47 N. Y. 619; M. P. Ry. v. Stock Yards Co., 204 Fed. 757; Great Lakes C. & D. Co. v. Transit Co., 220 Fed. 28.

*Robert D. Dalzell,* of *Dalzell, Fisher & Dalzell,* for appellee.—The position of the court in submitting the question to the jury was a proper one under the following cases: Chouteaux v. Leech, 18 Pa. 224; Hubbard v. Tenbrook, 124 Pa. 291; Griswold v. Gebbie, 126 Pa. 353; Wachter v. Assurance Co., 132 Pa. 428.

OPINION BY MR. JUSTICE SIMPSON, January 3, 1923:

Plaintiff sued to recover demurrage which accrued because of defendant's failure to promptly accept loaded freight cars consigned to it; a verdict was recovered for about one-half of the claim, judgment entered thereon and defendant appeals.

The only assignment of error relating to the evidence, complains because a witness for plaintiff (who had been shown carbon copies of certain original notices delivered to defendant), was permitted, despite its objection that those papers were not the best evidence, to answer the question: "Were those originals sent to the [defendant] by you?" The answer was, "They were." The objection was inopportunely made. Plaintiff had the right to thus lay the ground for later offering the papers in evidence; at which time, if the "best evidence" rule applied, the objection would have been proper. In fact, they were afterwards admitted in evidence, and to this no objection is now made.

All the other assignments of error complain because binding instructions for defendant were not given, or judgment entered in its favor non obstante veredicto. Under these circumstances, "all the evidence and inferences therefrom favorable to plaintiff must be taken as true, and all unfavorable to him, if depending solely upon testimony, must be rejected": Fuller v. Stewart Coal Co., 268 Pa. 328; Keck v. Pittsburgh, etc., Railway Co., 271 Pa. 479. In this light we now briefly state the facts.

Defendant had a contract with the United States Shipping Board Emergency Fleet Corporation, which provided that steel plates should be sent by it to defendant, for fabrication into armor used in the construction of vessels. The plates were shipped over plaintiff's line of road, consigned to the Fleet Corporation in care of defendant. It is alleged that because the latter's siding was so small, many of the cars could not be delivered as soon as they arrived, and hence were necessarily retained by plaintiff until notified by defendant it was ready to receive them.

There were then two methods of charging demurrage. In one, each car was a separate unit; if the consignee was not in a position to accept and unload it when tendered, demurrage became immediately due and payable. In the other, under what was known as the average agreement, forty-eight hours were allowed for the holding or unloading of a car; if unloaded in twenty-four hours, a day's credit was given as against the demurrage on other cars, which were not promptly unloaded, and at the end of the month bills were rendered and paid upon this basis.

One C. J. Welfing had been in defendant's employ for seventeen years, and though he was called a bookkeeper, his powers were much greater than usually exercised by one holding that position. He received the notices from the railroad company when cars were ready for delivery; he directed when each particular car was to be placed

upon the siding; he notified the company when it had been unloaded and could be removed, and what other car should be put in its place; he received the bills for demurrage, made settlement between defendant and the railroad in regard to them, prepared the checks for the balances found due, had them signed by the proper officer of defendant, and forwarded them with the bills to the railroad company. No one else, so far as plaintiff was concerned, had anything to do with this matter.

After the business had been carried on for some time, negotiations were entered into, at Mr. Welfing's request, resulting in an agreement, executed by him in the name of defendant per himself, and by plaintiff's representative, by which all future demurrage was to be calculated and charged in accordance with the average agreement plan. Defendant's secretary-treasurer, without referring specifically to the date of this agreement, avers as a reason why there was no necessity for having Welfing sign it, that he, the witness, was at the plant "every day and all day, except Sundays." Plaintiff's witnesses contradicted this, and hence, so far as it was important, it was for the jury's consideration.

At the end of the month after the agreement was executed, a bill was sent to defendant which included a charge for demurrage, the printed statement thereof setting forth, in heavy type, that it was prepared under the average agreement, and the form of the bill accorded in all respects with it and only with it. Welfing went over the account, prepared a check for the balance due, delivered it and the papers received from plaintiff to the proper officer of defendant, who signed the check and handed it and the papers to Welfing for delivery to plaintiff. They were so delivered. The secretary-treasurer now says that the matters covered by these papers "were not specially brought to my attention," and significantly adds, though perhaps not appreciating its effect, "Mr. Welfing handled that." This oral testimony was, of course, for the jury. If correct it was important as an

admission that Welfing was in charge of this branch of defendant's business, and from this and the other evidence the jury could have found he was acting within the apparent scope of his authority, and hence defendant would be bound by the agreement: Griswold v. Gebbie, 126 Pa. 353.   If defendant's executive officer noticed that the demurrage was being charged under the average agreement, then the settlement, in accordance therewith, was a ratification of Welfing's act in signing the paper. In any event, defendant thereby obtained and still retains a credit of three days' demurrage, stated on the bill as having been allowed; which credit could not have been had under any other plan than the average agreement.   If it be claimed there was no duty to return this credit, because defendant was not liable for demurrage on any plan, the answer is that it made no such contention at the time, but promptly and without objection paid the bill, knowing it was for demurrage.

Upon this branch of the case, the court below left to the jury two questions for its consideration: (1) Had Welfing authority to make the agreement?   and (2) If not, had his act in so doing been ratified by defendant?   We might dismiss the only assignment of error relating to this matter because the point for charge, embodied in it, wholly ignored the question of a possible ratification.   It asked that binding instructions be given solely because, as it alleged, "plaintiff [has] produced no evidence which is recognized by law as tending to establish the fact that the so-called average agreement was signed by an agent who had authority to bind the defendant thereto."   If we overlook this manifest defect, however, appellant is not helped.

It is not to be lost sight of that, under this request for binding instructions, we are not called upon to decide whether or not the case was properly submitted to the jury on either point, or whether it was error to submit it upon one or the other of them.   Even though the manner of submission was bad, if a jury could find the agree-

ment was in force upon either ground, binding instructions would not have been proper and this assignment necessarily falls. Viewed thus, we cannot say there was no question for the jury's consideration. If defendant's secretary-treasurer had given even a slight attention to the bill for demurrage, he would have seen it was charged under the average agreement. Whether or not he did see it was for the jury,—his denial being a matter that tribunal had the right to disbelieve, since it was oral and without corroboration.

Defendant's second allegation why judgment non obstante veredicto should have been entered in its favor, is that plaintiff failed to prove he was unable to actually place cars on the siding, on account of defendant's neglect to prepare it for their reception. There was ample evidence, however, covering the claim for demurrage as to some of these cars, and, therefore, this contention also must be overruled, since plaintiff's right to recover any sum, defeats the request for binding instructions. Plaintiff was not required (though there was evidence it did so) to constantly watch defendant's siding to see if the cars on it had been emptied and could be replaced by others. Under the course of dealing between them, when this occurred defendant gave notice to plaintiff, and if it so happened there were times when cars might have been placed there and were not, then, if plaintiff's evidence is to be believed, the neglect was defendant's, in failing to give notice of this fact, and liability arose under the rule which provided that "When delivery of cars......cannot be made on account of the act or neglect of the consignee......delivery will be considered to have been made when the cars were tendered."

The third complaint is that none of the notices served on defendant, regarding the arrival of cars, were in the form prescribed by the rules relating to constructive placement, which provided that the notices should be in writing and "contain point of shipment, car initials and numbers, and the contents." Though some of them were

quite brief, most of them specified the number of the car, what it was loaded with, that it was consigned to defendant, and would be subject to demurrage after a given date. From the beginning, this form was received by defendant without objection, and without asking for any additional information; and the bill or bills first sent were paid, although the notices were only in that form. From this, the jury might well have found defendant was satisfied with it, and ought not to be permitted to complain,—after it was too late to effectively give additional information,—because the notices did not fully comply with the rules. They were so worded in order that defendant might know exactly what cars plaintiff held for delivery to it, and cannot, under the circumstances stated, be wrested from this manifest purpose so as to defeat the claim, in the absence of averment and proof (and there was none) that defendant was misled or suffered injury by reason of the alleged defect, which apparently was not deemed important until after the liability arose.

Appellant's final contention is that, since the cars were consigned to the Emergency Fleet Corporation in care of defendant, the former and not the latter must be held liable for any demurrage. This apparently is an afterthought; for, as already pointed out, defendant made no such complaint when the first bills for demurrage were sent to it. Then was the time to object, when plaintiff could protect himself (as he cannot now do) by calling upon the Fleet Corporation for payment or security before delivering the cars: Pittsburgh, C., C. & St. L. R. R. Co. v. Fink, 250 U. S. 577.

Moreover, the objection is unavailing for two other reasons. In the first place, three of the cars, for which five days' demurrage was due, were cars containing coal purchased by defendant, with which the Fleet Corporation had no connection, and hence binding instructions could not properly have been given. In the second place, by the average agreement, which we have already shown

the jury might have found to be in force, defendant "expressly agrees to and with [plaintiff] to make prompt payment of all demurrage charges accruing thereunder." Appellant attempts to avoid this direct obligation, by calling attention to the fact that the agreement also provides it shall only relate to "cars which may......be handled for our account." It was not entered into or signed, however, by or for the Emergency Fleet Corporation, or on its account, but solely for account of defendant. With the relations between the consignor and defendant, plaintiff was not concerned; nor, so far as appears, had he any knowledge of them. What he knew was that the cars were under the control of defendant, were being handled on its account, were held in the yard awaiting its call for their delivery, and were delivered on its account as soon as it was ready to receive them. Surely from these facts it would have been error to rule, as a matter of law, that the cars were not being "handled for our [defendant's] account."

The judgment of the court below is affirmed.