## Dunn *v.* Dunn, Appellant.

Argued April 11, 1935.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

534

*Herman Moskowitz,* with him *Leon W. Korr,* for appellant.

*George T. Steeley,* with him *I. Sydney Bass,* for appellee.

OPINION BY RHODES, J., July 18, 1935:

William J. Dunn, an adult son of the defendant, brought this action in assumpsit against his father, William F. Dunn. The plaintiff alleges in his statement of claim that the defendant owned a motion picture theatre located at 24th and Brown Streets, Philadelphia, Pa.; that in April of 1925, the defendant verbally employed the plaintiff to manage said theatre for him, and agreed to pay him $15 a week, and also, as a further consideration for his services, agreed to lease the theatre to plaintiff and his sister at a weekly rental of $100, for the balance of the defendant's life, when the organ in the said theatre was fully paid for.

The plaintiff then avers that on June 26, 1926, the defendant leased the said theatre to Nathan A. Stiefel and Samuel H. Stiefel for a period of twenty years at a rental of $700 per month; and "that on or about the 25th day of June, 1926, prior to the defendant leasing the said theatre to the said Nathan A. Stiefel and Samuel H. Stiefel, as aforesaid, the defendant did verbally agree with the plaintiff that in consideration of his services rendered to the defendant in said theatre, and the release of the defendant from his promise to lease the said theatre to his (the plaintiff's) sister, Madeline C. Hild and himself, he would pay the plaintiff the sum of $170 per month during the term of the said lease, from the rental of said theatre ......"

The plaintiff's statement also sets forth that he was paid $170 a month until March of 1930, when the defendant cut down these payments to approximately $100 a month, which continued until May of 1932, when the defendant stopped the payments altogether.

These arrearages, to the date of the suit, total $1,695, and, with interest, aggregate $1,903.62, the amount of the jury's verdict for the plaintiff.

The defendant denied that he hired his son to manage the theatre, or that he had any contract with him whatsoever, including that for the leasing of the theatre at $100 a week for the remainder of his life. The defendant admitted paying wages to his son for his work in the theatre previous to the Stiefel lease, also making a payment of $170 a month for some time after the lease to the Stiefels; but claims that the monthly payments following the lease were voluntary and gratuitous on his part, subject to discontinuance at his pleasure, and that they were never made in pursuance of any contract or for any consideration.

The plaintiff and the defendant lived together at the home of defendant's daughter after the death of defendant's wife, and they were living together on June 26, 1926. The plaintiff had worked for his father in the theatre continuously since March, 1925.

Appellant's second assignment of error is to the lower court's refusal to enter judgment n. o. v. on the ground that plaintiff's evidence was not sufficient to support the verdict. We think that this assignment must be sustained. In so holding, we are not unmindful of the familiar rule that, in considering a motion for judgment n. o. v., the testimony must be read in a light most favorable to plaintiff, and the plaintiff must be given the benefit of every fact, and inference of fact, which may be reasonably deduced from the evidence. Christ v. Hill Metal & Roofing Co., 314 Pa. 375, 171 A. 607; Strawbridge v. Hawthorne, 47 Pa. Superior Ct. 647; Davis, Director General, v. Carroll-Porter Boiler & Tank Co., 276 Pa. 71, 119 A. 742.

The basis of the plaintiff's action against his father is an alleged contract entered into on June 26, 1926, to pay him $170 a month for the duration of the Stiefel lease, from the rental of the theatre; and that this pay-

536

ment was to be made in consideration of past services rendered to the father in managing the theatre, and in consideration of the plaintiff's release of the defendant's oral contract to lease. The plaintiff testified relative to the alleged contract between himself and his father on the 26th of June, 1926, as follows: "...... So, we argued there until about four o'clock in the morning, and to please my sister more than anybody, Sam Stiefel spoke up and he said, 'I will give you seven hundred dollars a month rent for twenty years, and if I buy your theatre I will pay you ninety-five thousand dollars.' We accepted it. Q. What was said regarding the division, if anything, of that money? A. Well, my father said, 'Well, I am going to take four hundred dollars of the money and I will give you three hundred dollars, to you and your sister.' Well, I spoke up and I said that I should get more than Madeline, because I did more work than she did down in the theatre. My father said, 'Madeline, if you will take a cut in your money, I will take a cut in mine, and pay Mr. Goldman twenty dollars.' Q. What happened? A. So we figured it out that my sister would get a hundred and thirty-five dollars a month for twenty years, and Mr. Goldman would get twenty dollars a month for twenty years, and my father would get three hundred and eighty-five dollars a month for twenty years, and I would receive a hundred and seventy dollars a month for twenty years."

Madeline C. Hild, a married sister of the plaintiff and an interested witness, testified as to the occurrence on June 26th when the alleged contract between the plaintiff and the defendant was said to have been made. Her principal testimony, as to the alleged contract, is less definite than that of the plaintiff, and is as follows: "Q. Now, did your father state at that time why he was giving you this money? A. Yes, sir. Q. What did he say? A. Said that his children had worked there all these years without any recompense,

built the theatre up, never got nothing for it, and it was my mother's wish that the theatre would be her children's some day, for our past services all these years."

Another witness for the plaintiff, Samuel H. Stiefel, testified that the defendant stated to him on the day in question that the children would have to consent to the lease because he had promised them the theatre, and that there would have to be money for him after taking care of the children; that his son was to get $170 per month and his daughter $130 per month, and that this money was to be paid to the children "for their years of work in the theatre, and the promise of them getting the theatre."

The next witness who testified for the plaintiff was Sidney L. Krauss, an attorney. He testified that he was present at the time the lease for the theatre was prepared and executed by the lessee and the defendant. This was the day after the purported agreement was made between the plaintiff and the defendant. The witness testified that the defendant said he was directing a part of the rentals to be sent to the plaintiff and his sister, because the children had been of great assistance to him in building up his business.

The testimony of Charles A. Hild, son-in-law of the defendant and husband of plaintiff's sister, as to what took place when the purported agreement was made, is as follows: "From there we went down to the Elks Club and started dickering with them, and the discussion kept on until about four o'clock the following morning before everybody was satisfied, before they agreed on just what the terms of the lease would be and the amount of rent and the amount called for in the option and how the money was to be divided up. ...... Q. What was said, if anything, by Mr. Dunn about the division of the money? A. The $700—the boy wanted more money than the girl because he would have to pay her board, and it was finally decided the

boy would get $170 and the daughter $135, and she finally agreed, and Mr. Dunn said he would take a cut, he would take. Goldman's cut out of his money, and he was to get $375, and the girl was to get $135 and the boy $170."

This witness also testified that the defendant stated, when all were present on the morning of June 26, 1926, that the reason "the children were there was because they had to be satisfied, inasmuch as he had promised the theatre to them." This same witness, the son-in-law of the defendant, wrote out the direction to the real estate agent, who was to collect the rent for the defendant, to turn over to the plaintiff $170 per month, and to his wife, Madeline C. Hild, $135 per month. This order to the real. estate agent, signed by the defendant, merely authorized him to collect the rent of $700 per month, and out of the proceeds to retain $20 for his services for collecting, and remit $375 to the defendant, $170 to the plaintiff, and $135 to Madeline C. Hild. It was revocable at any time by defendant; contained no promise; and acknowledged no obligation to the plaintiff.

We are of the opinion that there can be no recovery in this case by the plaintiff-son against the defendant-father, unless there has been proof of an express contract by direct, clear, and positive evidence. There has been no such proof produced by the plaintiff. More than the declarations shown by the plaintiff is required to create a legal obligation between a parent and a child living together at the time.

The plaintiff declared on a parol contract and averred in his plaintiff's statement that the defendant agreed with the plaintiff to "pay the plaintiff the sum of $170 per month during the term of the said lease, from the rental of the said theatre." The testimony produced by the plaintiff and his witnesses does not sustain this averment. The lease which the defendant executed with the Stiefels for the theatre was for a period of

twenty years at a rental of $700 per month. The monthly rental was payable to the defendant. There is no evidence that the defendant expressly promised to pay the plaintiff $170 a month for the term of the Stiefel lease, or for the period of twenty years, or for any definite period. The testimony does not prove the elements of a valid contract between the plaintiff and the defendant. The evidence nowhere discloses that the minds of the parties ever met and created a contract whereby the defendant was bound to pay the plaintiff $170 per month during the term of the Stiefel lease, from the rental of the theatre.

The relationship of the parties in this case repels the idea of such a contract as alleged. Appeals of Fross et al. and Loomis et al., 105 Pa. 258. The proofs must, therefore, show an express contract; and to establish such a contract requires the production of direct, clear, and positive evidence. Burgess, Adm'r, v. Burgess, Adm'r, 109 Pa. 312, 1 A. 167; Mosteller's Appeal, 30 Pa. 473.

It is natural that a parent discuss with his children the possible disposition of his business or property. It is natural that he consult them relative to a proposed transaction of some magnitude. A parent and child do not commonly deal with each other as they deal with strangers. They do not deal at arm's length, but there is a mutual confidence that is not watchful against the assertions of right founded on the expressions of one or the other. Ackerman et al. v. Fisher et al., 57 Pa. 457. It was most natural for the defendant in this case to discuss with his children the services which they may have rendered to him and to their mother, and to take up with them the proposed leasing of the theatre. A parent does not expect to have his language used in the family circle distorted into legal obligations. By instinct, a parent places some confidence in his children and does not expect to have his parental intentions or

loose declarations given an effect that he never intended.

Expressions or acts of gratitude by a parent cannot be construed as promises upon which an action may be brought by ungrateful or disgruntled children. A parent may disclose his settled purpose to compensate a child; he may acknowledge his own sense of obligation for what he believes to be filial devotion and the real worth of his child, and for the profit he may have derived from his services; nevertheless, such declarations do not create a contract whereby a child may deprive his parent of a large portion of his property. Zimmerman v. Zimmerman, 129 Pa. 229, 18 A. 129. The declarations disclosed in this case do not afford a basis whereby the children can deprive the parent of the control, disposition, and ownership of his own property or funds.

The evidence in this case shows expressions of parental intentions and declarations of parental gratitude. They do not constitute such proofs as would establish an enforceable contract between the plaintiff and the defendant. Even an indulgent father does not as a rule divest himself of his property without some terms or conditions. Rader v. Keiper, 285 Pa. 579, 132 A. 824; Breniman v. Breniman et al., Executors, 281 Pa. 304, 126 A. 751. The proofs do not clearly define the terms or establish an express contract.

The judgment is reversed, and is here entered for the defendant.