James W. DAVIS, a minor, by Sue G.
Davis, his Guardian, and Sue G.
Davis, in her own right,

v.

Ralph W. SMITH, Administrator c.t.a. of
the Estate of George Maslin
Davis, Deceased.

Civ. A. No. 16960.

United States District Court
E. D. Pennsylvania.

Nov. 22, 1954.

See, also, 125 F.Supp. 134.

Freedman, Landy & Lorry, Philadelphia, Pa., for plaintiffs.

John B. Hannum, 3rd, Philadelphia, Pa., for defendant.

LORD, District Judge.

The defendant has filed this motion to dismiss. He states three reasons why it should be granted, namely:

1. Improper venue;

2. Improper service of process; and

3. Failure to state a cause of action. We shall discuss them in that order.

The complaint alleges a claim to recover damages for severe and permanent injuries sustained by one of the plain-

tiffs, James W. Davis, a minor, while a passenger in an automobile driven by his father, the defendant's decedent, on June 10, 1952, in the Commonwealth of Pennsylvania. The decedent was killed instantly in the accident. The other plaintiff, Sue G. Davis, the widow of the decedent and mother of the minor-plaintiff, sues in her own right for damages sustained by reason of her minor son's injuries.

1. We will first consider the question of venue. Both plaintiffs are citizens and residents of Virginia. Defendant, Ralph W. Smith, administrator of the estate of George Maslin Davis, is a resident of Delaware and was appointed administrator c. t. a. of the decedent's estate on December 11, 1952, by the Register of Wills of Chester County, Pennsylvania, where the decedent was domiciled at the time of his death. The administrator has not been discharged from his official duties up to the present time.

Service of process was first made by the United States Marshal upon the defendant-administrator by serving a copy of the summons and complaint upon the administrator at his home in Delaware and by serving a copy of the summons and complaint upon the Secretary of the Commonwealth of Pennsylvania under the provisions of 20 P.S. § 320.307(b).

The defendant-administrator filed with the office of the Register of Wills of Chester County, Pennsylvania, an executed appointment of Carl E. Guether, Philadelphia, as agent and attorney-in-fact for him as administrator, and authorized service of any and all process against the said administrator upon his attorney-in-fact. On September 10, 1954, plaintiffs made an additional service of summons and complaint upon Carl E. Guether, as agent and attorney-in-fact for the defendant-administrator.

■ Where jurisdiction of the court is based on diversity of citizenship, as in the instant case, the situs of suit or venue is controlled by the provisions of § 1391, 28 U.S.C., as follows:

"(a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in the judicial district where all plaintiffs or all defendants reside."

■■ The defense of improper venue is, of course, a personal privilege which may be waived by the defendant. Panhandle Eastern Pipe Co. v. Federal Power Commission, 1945, 324 U.S. 635, 65 S.Ct. 821, 89 L.Ed. 1241. Such waiver occurs whenever the party manifests an intent, express or implied, to forego this privilege. Where the court finds an "act" by the defendant indicative of an intent to waive the privilege of venue, then the defendant will be precluded from asserting this defense.[1] The waiver in this case is predicated solely upon the affirmative act of the non-resident administrator in appointing an agent to accept service in Chester County, Pennsylvania. By this act, the administrator agrees to be sued in the courts of Pennsylvania, and this submission to judicial process is deemed to extend not only to the state courts, but also to the federal courts located within the state. Neirbo Co. v. Bethlehem Shipbuilding Corp., Ltd., 1939, 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167.

■ The defense available under Section 1391 is a federal privilege created by a federal statute as interpreted and construed by the federal courts. Ex parte Schollenberger, 1878, 96 U.S. 369, 24 L.Ed. 853. As such, it cannot be modified, destroyed, or expanded by the terms of any state statute. The waiver

---

1. A variety of "acts" have been construed to constitute waiver of improper venue:

(a) by unreasonable delay in asserting defense after suit. Pennsylvania R. Co. v. Swift & Co., D.C.E.D.Pa.1917, 242 F. 92;

(b) by removal of suit to Federal Court. Cincinnati, H. & D. Ry. Co. v. Orr, D.C.E.D.N.Y.1914, 215 F. 261; and

(c) by presenting a claim in receivership proceedings. Alexander v. Hillman, 1935, 296 U.S. 222, 56 S.Ct. 204, 80 L. Ed. 192.

of Section 1391, predicated upon compliance with the state act, cannot be based upon the provisions and terms of the state act, but, on the contrary, springs from federal judicial interpretation of the effect and significance of the act of appointing the agent. The act of appointment is conclusive evidence of the non-resident administrator's intent to submit to suit and waive the defense of improper venue. Baltimore & Ohio Railroad Co. v. Harris, 1871, 12 Wall. 65, 20 L.Ed. 354; Lafayette Insurance Co. v. French, 1856, 18 How. 404, 15 L.Ed. 451.

The leading case on this issue is Neirbo Co. v. Bethlehem Shipbuilding Corp., Ltd., supra. This case did not hold the state statute itself created waiver of venue. The result was based upon the defendant's voluntary "act" in appointing an agent to accept service of process, which the court construed to be a submission to all judicial process and a consent by the foreign corporation to be sued in the New York courts, both state and federal. Cf. Robinson v. Coos Bay Pulp Corporation, 3 Cir., 1945, 147 F.2d 512. The crux of the matter in the present case was the defendant's appointment of an agent to accept service of process. The fact that the agent was appointed pursuant to the directive of the state statute was incidental. The submission to judicial process and the waiver of venue is just as complete, just as effective, and just as binding whether the appointment of an agent is pursuant to a statutory requirement or otherwise.

▐ It appears that the defense of improper venue is one personal to the defendant, which he may waive, expressly or impliedly, either prior to or after the institution of suit. The appointment of an agent for acceptance of service of process *by operation of a state statute solely,* without an affirmative "act" on the part of the defendant in appointing the agent, may not of and in itself constitute a waiver of venue, i. e., a binding indication of the defendant's willingness to be sued in that state. Where, however, as here, a defendant performs the affirmative "act" and in fact actually appoints an agent to accept service of process, whether voluntarily or under the requirement of a local statute, under the Neirbo case such defendant has waived the personal defense of venue and is amenable to suit in the federal court in the state of appointment. The appointment of Carl E. Guether as agent and attorney-in-fact for Ralph W. Smith, administrator c. t. a. by the defendant is the same as the appointment of an agent for service of process made by the defendant in the Neirbo case, and as such, constitutes a waiver of improper venue.

In Olberding v. Illinois Central R. Co., Inc., 1953, 346 U.S. 338, 74 S.Ct. 83, the validity of the Neirbo case was reaffirmed where the non-resident individual or the foreign corporation has, in fact, appointed an agent for service of process. The court said, 346 U.S. at page 341, 74 S.Ct. at page 86:

"This conclusion is entirely loyal to the decision and reasoning of Neirbo Co. v. Bethlehem [Shipbuilding] Corp., 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167. There the defendant, a Delaware Corporation, was sued by a non-resident of New York in the United States District Court for the Southern District of New York, and we found the venue requirements of what is now 28 U.S.C. § 1391(a), 28 U.S.C.A. § 1391(a) satisfied because Bethlehem had designated an agent in New York 'upon whom a summons may be served within the state of New York.' 308 U.S. at page 175, 60 S.Ct. at page 158, 84 L.Ed. 167. We held that this constituted an 'actual consent' to be sued in New York, not the less so because it was 'part of the bargain by which Bethlehem enjoys the business freedom of the State of New York'. *Ibid.* We further held, following Ex parte Schollenberger, 96 U.S. 369, 377, 24 L.Ed. 853, that this consent extended to all courts sitting in New York, both federal

and state. Of course this doctrine would equally apply to an individual defendant in situations where a state may validly require the designation of an agent for service of process as a condition of carrying on activities within its borders, and such designation has in fact been made. See Kane v. New Jersey, 242 U.S. 160, 37 S.Ct. 30, 61 L.Ed. 222. But here no such designation was required or made, and hence the Neirbo case has no applicability."

Clearly, the Olberding and Neirbo cases are entirely consistent. The different results arise solely because under the non-resident motorists statutes the "appointment" of a statutory agent by the non-resident motorists is purely fictional and is not a voluntary act of consent; whereas, the actual appointment of an agent, whether by reason of the requirement of a local statute or otherwise, by a foreign corporation as in the Neirbo case, is an affirmative consent to be sued. As Mr. Justice Frankfurter points out, the doctrine of the Neirbo case is equally applicable to non-resident individual defendants.

■ Accordingly, the defendant, by appointment of Carl E. Guether as agent for the acceptance of service of process, waived the venue defense and is amenable to suit in this Court.

2. As to the defense of Improper Service, Rule 4(d) of the Federal Rules of Civil Procedure, 28 U.S.C., provides as follows:

" * * * Service shall be made as follows:

"(1) Upon an individual other than an infant or an incompetent person, by delivering a copy of the summons and of the complaint to him personally or by leaving copies thereof at his dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint *to an agent authorized by appointment or by law* to receive

service of process. (Emphasis added.)

\* \* \* \* \* \*

"(7) Upon a defendant of any class referred to in paragraph (1) or (3) of this subdivison of this rule, it is also sufficient if the summons and complaint are served in the manner prescribed by any statute of the United States or in the manner prescribed by the law of the state in which the service is made for the service of summons or other like process upon any such defendant in an action brought in the courts of general jurisdiction of that state."

In the instant case, defendant has been served twice, once under the provisions of the service statutes of the Commonwealth of Pennsylvania, as provided in subsection (7), supra, and, secondly, by service upon an appointed agent of the defendant, as provided in subsection (1), supra.

The Fiduciaries Act of 1949, Act of April 18, 1949, P.L. 512, Art. III, § 307, 20 P.S. § 320.307, provides as follows:

"(b) Power of attorney. If a personal representative is or becomes a nonresident of the Commonwealth, the acceptance of his letters, or the act of becoming a nonresident, as the case may be, shall constitute the Secretary of the Commonwealth his attorney-in-fact upon whom service of process and notices may be made as to all causes of action relating to the decedent or the administration of his estate. 1949, April 18, P.L. 512, art. III, § 307."

Pursuant to the foregoing, service of process was made by serving the Secretary of the Commonwealth and also by service of the summons and complaint by registered mail upon the administrator at his home in Delaware.

In addition, service was made upon Carl E. Guether, the agent and attorney-in-fact appointed by the defendant in Chester County, Pennsylvania, to accept service of process, which service was in accordance with the provisions of

Rule 4(d)(1) of the Federal Rules of Civil Procedure.

■ It would appear, therefore, that the services made in the instant case are proper.

3. We now come to the third and most difficult problem, i. e. the defense of failure to state a good cause of action against the defendant. The questions posed are:

(1) May the minor child recover damages in a tort action from the personal representative of his deceased father's estate?

(2) May the widow recover damages resulting from her son's injuries from the personal representative of her deceased husband's estate?

These questions have not been answered directly by any appellate courts in Pennsylvania.

The first judicial precedent for the rule denying recovery in *living* family relationships was Hewlett v. George, 1891, 68 Miss. 703, 9 So. 885, 13 L.R.A. 682. This case was destined to have far reaching influence. There the mother wrongfully confined her child to an insane asylum. Suit was instituted by the aggrieved child against her mother. The court, without citation of authority and without reference to or discussion of the common law, held that no recovery could be allowed on the flat ground of a newly declared public policy, saying, 9 So. at page 887:

"* * * But so long as the parent is under obligation to care for, guide, and control, and the child is under reciprocal obligation to aid and comfort and obey, no such action as this can be maintained. The peace of society, and of the families composing society, and a sound public policy, designed to subserve the repose of families and the best interests of society, forbid to the minor child a right to appear in court in the assertion of a claim to civil redress for personal injuries suffered at the hands of the parent. The state, through its criminal laws, will give the minor child protection from parental violent and wrongdoing, and this is all the child can be heard to demand. * * *"

This case did not purport to establish a common law rule such as is recognized in tort actions between spouses. The immunity of husband and wife, inter se, having its basis in feudal concepts and the common law doctrine of unity of husband and wife which negated the possibility of an adversary plaintiff and defendant, was not considered applicable and binding with regard to rights between parent and child in the common law by modern authorities. McCurdy, Torts Between Persons in Domestic Relations, 43 Harvard Law Review 1030, 1059 et seq. (1930); Worrell v. Worrell, 1939, 174 Va. 11, 4 S.E.2d 343.

Dean Prosser has aptly stated the problem of legalistic analogies as follows (p. 906):

"The Courts which deny the action have relied heavily on the analogy of husband and wife, which seems quite inapplicable because of the difference in the common law concept of the relations, and the absence of statutes to be construed. In addition, they have invented much the same variety of unconvincing reasons as in the case of the marital relation. * * * But, again, as in the case of husband and wife, the chief reason offered is that domestic tranquillity and parental discipline and control would be disturbed by the action—and again on the theory that an uncompensated tort makes for peace in the family and respect for the parent, even though it be rape or a brutal beating, and *even though the relation itself has been terminated by death before the suit.*" Prosser, Law of Torts (1941). (Emphasis added.)

In Roller v. Roller, 1905, 37 Wash. 242, 79 P. 788, 68 L.R.A. 893, the court denied recovery of damages against a father who had raped his daughter on the theory that public policy precludes such suits based upon the interests society

has in preserving harmony in domestic relations.

Two years prior to the Roller case in McKelvey v. McKelvey, 1903, 111 Tenn. 388, 77 S.W. 664, 64 L.R.A. 991, an infant charged cruel and inhuman treatment by her stepmother. The court denied recovery on the ground of public policy and, for the first time, declared that there was a common law rule denying a right of recovery to the child. The court cited as authority for this proposition Hewlett v. George, supra, and several authorities for the contention that a husband was immune to suit by his wife at common law.

The Hewlett, McKelvey and Roller cases set the stage and laid a foundation for a large body of decisions in numerous jurisdictions in the United States flatly denying any right of recovery to a child against a living parent under any circumstances. But in more recent years it would seem that the trend of judicial decisions and the thinking of legal writers has been toward amelioration and limitation of the rule, based upon a recognition that the Hewlett, McKelvey and Roller cases were wrongly decided.

This thinking was first asserted in Thompson v. Thompson, 1910, 218 U.S. 611, 31 S.Ct. 111, 54 L.Ed. 1180, where the dissenting opinion of Justices Harlan, Holmes and Hughes spoke out for the right of a married woman to sue her husband. See also the dissent of Chief Justice Cardozo, Justices Crane and Andrews in Sorrentino v. Sorrentino, 1928, 248 N.Y. 626, 162 N.E. 551.

The absolute rule originating in Mississippi was repudiated by the Supreme Court of New Hampshire in its landmark opinion in Dunlap v. Dunlap, 1930, 84 N.H. 352, 150 A. 905, 71 A.L.R. 1055. There the court allowed recovery against the father by a minor who was injured while employed in his father's business. The court concludes a rather lengthy opinion in this summary, 150 A. at page 915:

"To sum up our conclusions: Such immunity as the parent may have from suit by the minor child for personal tort arises from a disability to sue, and not from lack of violated duty. *This disability is not absolute.* It is imposed for the protection of family control and harmony, and exists only where a suit or the prospect of a suit might disturb the family relations. Stated from the viewpoint of the parent, it is a privilege, but only a qualified one. It is not an answer to a suit for an intentional injury, maliciously inflicted. It does not apply to an emancipated child, *or to a case where liability in fact has been transferred to a third party.*" (Emphasis added.)

In Mahnke v. Moore, 1951, 197 Md. 61, 77 A.2d 923, an illegitimate minor child sued the estate of her father to recover for shock and mental anguish sustained by her when her father killed her mother and then committed suicide in the child's presence under atrocious and shocking circumstances. Conceding that parental authority should be maintained, the court allowed recovery because the death of the parent left no family in which discipline and tranquillity was to be maintained. *Since the reason for the parental immunity had disappeared,* the court held there was no purpose in applying the rule to bar recovery from the father's estate.

In reviewing the foregoing decisions, a policy and trend in the law become clear. Basically, there is a feeling that injustice results from a broad and complete application of the doctrine of parental immunity as a bar to any suit against a parent for personal injury to the child. Confronted with a large body of law based on the authority of the Hewlett, McKelvey and Roller cases, the court must face with reluctance a decision to overrule this heretofore established law. On the other hand where right and equity compel, it should not assist in perpetuating a doctrine which is, in large part, inhumane and unjust in our changing mode of life. This the authorities recognize. Cowgill v.

Boock, 1950, 189 Or. 282, 218 P.2d 445, 19 A.L.R.2d 405; Rozell v. Rozell, 1939, 281 N.Y. 106, 22 N.E.2d 254, 123 A.L.R. 1015 (suit between siblings); Worrell v. Worrell, supra; Lo Galbo v. Lo Galbo, 1930, 138 Misc. 485, 246 N.Y.S. 565.

The view of the more recent decisions and the modern legal authorities on the subject would appear to be that the rule of non-parental liability is to apply *only where the injuries occur while the parent is exercising his parental duty in the narrow sense.* Under this view the parent would not be liable for discipline or chastisement flowing from his duties as head of the family or for injuries resulting from disrepair or negligent defects in the family home. It is recognized that even within this scope wrongs may be done to the child. However, these wrongs may still have to be sacrificed to public policy in favor of protecting parental discipline in the home and preserving the family relationships. Although even some wrongs may be hidden by this immunity, public policy, as it exists today, should permit this limited immunity. But the immunity given to the parent is not one of right which he may demand, but is granted him only so long as he conducts himself properly as a parent and carries out the parental duties that society imposes upon him. The parental non-liability is given as a means of enabling the parent to discharge his duties in preserving the domestic tranquillity. It should not shield the parent where the matter arises from a "non-parental" occurrence, or where the parent commits an atrocious assault outraging the duties imposed upon him as a parent by society, or where either the parent or the child is dead and there is thus no tranquil relationship between them to preserve.

 Whatever the law of other jurisdictions may be, this Court must apply the law of Pennsylvania. Erie Railroad Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. If there are no appellate court decisions directly in point, as here, this Court is justified in making its own determina-

tion as to what the appellate courts would probably rule in a similar case. King v. Order of United Commercial Travelers of America, 1948, 333 U.S. 153, 68 S.Ct. 488, 92 L.Ed. 608; Berkshire Land Co. v. Federal Security Co., 3 Cir., 1952, 199 F.2d 438.

There are three appellate court decisions in Pennsylvania which hold that a parent may not sue an unemancipated child *while they are both living.* In Duffy v. Duffy, 1935, 117 Pa.Super. 500, 178 A. 165, the mother brought suit against her son for injuries she received while riding as a guest in a motor vehicle operated by the minor defendant. The court denied recovery. In Silverstein v. Kastner, 1941, 342 Pa. 207, 20 A.2d 205, a mother was precluded from bringing a suit against her son for injuries received by reason of his negligent operation of the automobile. In Detwiler v. Detwiler, 1948, 162 Pa.Super. 383, 57 A.2d 426, defendant minor-son negligently drove an automobile into an electric light pole. His mother and two sisters were nonsuited. The court stated, 162 Pa.Super. at page 385, 57 A.2d at page 427: "It is settled beyond question in this state that parents cannot maintain a suit against an unemancipated minor son for injuries resulting from his tortious act."

It would appear, however, that the appellate decisions in Pennsylvania consider the doctrine of interfamily immunity personal to the parent or spouse, that it expires upon the death of the person protected, and that it does not extend to the decedent's estate. This reasoning was apparent in Kaczorowski v. Kalkosinski, 1936, 321 Pa. 438, 184 A. 663, 104 A.L.R. 1267, where the court allowed a wife's father to sue the estate of the husband to recover damages for the wife's wrongful death. While the court construed the Wrongful Death Act, Act of April 15, 1851, P.L. 669, § 19, 12 P.S. § 1601, as amended by the Act of April 26, 1855, P.L. 309, 12 P.S. § 1602, it pointed out that the husband's immunity to suit is personal to him and upon his death it expires, there being no

further reason for the immunity to continue. The court said, 321 Pa. at pages 440, 442, 444, 184 A. at pages 664, 665:

"Since a negligent trespass of a husband upon the person of the wife does not cease to be an unlawful act, *although the husband may be exempt from suit or liability as to her* (Koontz v. Messer [and Quaker State Oil Refining Company], 320 Pa. 487, 181 A. 792, 794, * * *) *it may, being a wrongful act, support an action in favor of other parties as against whom the husband has no such immunity and where no just reason compels extension of his immunity.* * * * (Emphasis added.)

"* * * There is no reason why the fortuitous circumstances that the tort-feasor, whose act deprived the parent of support, happened to be the husband of the person who was injured by that act, and who also furnished the support, should be a bar to recovery here. The disability of the wife to sue is personal. It does not inhere in the tort itself, as is the case where she is guilty of contributory negligence. * * *

"The second reason for prohibiting suits between spouses disappears entirely in a suit by a parent under a death statute. *When the policy behind a rule no longer exists, the rule should disappear. There is no marital peace and felicity to be preserved here. * * *" (Emphasis added.)

We have not found any Pennsylvania appellate court decisions that hold that a *minor child may not sue his parent* to recover damages for personal injuries by reason of the doctrine of parental immunity.

On the contrary, this was permitted in Minkin v. Minkin, 1939, 336 Pa. 49, 7 A.2d 461. There the court sustained a right of action by a minor against her mother to recover damages for the wrongful death of the father who died in an automobile accident resulting from the mother's negligence. The majority held that the public policy which forbade such a suit was set aside by the Wrongful Death Act, supra. This Pennsylvania case was recently cited as authority for the right of an unemancipated child to sue his father for burns sustained in the operation of the father's business. Signs v. Signs, 1952, 156 Ohio St. 566, 103 N.E.2d 743. After reviewing the law in other jurisdictions, the court said, 103 N.E.2d at page 747:

"We have cited the foregoing authorities solely for the purpose of demonstrating the present-day tendency of the courts to limit or step away from the doctrine of the immunity of a parent from a tort action by his unemancipated child * * *."

Further the court added, 103 N.E.2d at page 748:

"It seems absurd to say that it is legal and proper for an unemancipated child to bring an action against his parent concerning the child's property rights yet to be utterly without redress with reference to injury to his person.

"It is difficult to understand by what legerdemain of reason, logic or law such a situation can exist or how it can be said that domestic harmony would be undisturbed in one case and be upset in the other."

See also Robinson's Adm'r v. Robinson, 1920, 188 Ky. 49, 220 S.W. 1074 and Deposit Guaranty Bank & Trust Co. v. Nelson, 1951, 212 Miss. 335, 54 So.2d 476. In the latter case the court stated, 212 Miss. at page 350, 54 So.2d at page 478:

"* * * Clearly the McLaurin case [McLaurin v. McLaurin Furniture Co., 166 Miss. 180, 146 So. 877] recognizes that the act of the husband is wrongful and the wife only is denied a remedy against him. The immunity under the Austin case [Austin v. Austin, 136 Miss. 61, 100 So. 591, 33 A.L.R. 1388] as to the husband does not destroy the right of action where the personal defense is non-existent. Hence the disabili-

ty of the wife to sue is one which is personal to her alone, and does not inhere in the tort itself."

This case is especially significant because it was decided by the same court that decided Hewlett v. George, supra, which first announced the doctrine of parental immunity. Thus, the court which first propounded that doctrine recognized the fact that the immunity from suit was personal and expired upon dissolution of the marriage by death.

As early as 1826 the Supreme Court of Pennsylvania in Dougherty v. Snyder, 15 Serg. & R. 84, sustained the right of a wife to sue her husband's executor after his death for breach of contract between husband and wife despite the bar against the wife suing her husband during his lifetime. The court stated (p. 91):

> "The last objection remains to be considered; it is, that if it be the law, that the wife cannot sue the husband, she cannot sue her husband's executors; but if this be a contract where the day of payment is postponed until the death of the husband, then the right of action is only suspended. There are numerous decisions to this purpose; and it would not follow, that if it were payable immediately the debt was extinct; the remedy only is suspended, and one, among many other reasons for this is, that the husband and wife form but one body; but on his death she being the survivor, has all the right not extinguished by the marriage; and therefore her husband being dead, this can cause no strife between them. *She may sue his executors.* Like the settlement of a pauper, the right is suspended during his life, but revives on his death; or privileged persons, the remedy against them is suspended until the privilege ceases * * *." (Emphasis added.)

In Koontz v. Messer, 1935, 320 Pa. 487, 181 A. 792, the wife was a passenger in an automobile driven by the husband in the course of his employment. Suit was instituted by the injured wife against the employer, Messer (who was the wife's father), and another defendant. The employer defended on the ground that the principal could only be liable where its agent was liable and, since the agent was not liable because of his immunity as husband of the plaintiff, this was a complete defense to the action. The defense was denied, and the court cited with approval, 320 Pa. on page 493, 181 A. on page 794, the following language from Schubert v. August Schubert Wagon Co., 1928, 249 N.Y. 253, 164 N.E. 42, 64 A.L.R. 293:

> " '* * * The defendant, to make out a defense, is thus driven to maintain that the act, however negligent, was none the less lawful because committed by a husband upon the person of his wife. This is to pervert the meaning and effect of the disability that has its origin in marital identity. A trespass, negligent or willful, upon the person of a wife, does not cease to be an unlawful act, though the law exempts the husband from liability for the damage. *Others may not hide behind the skirts of his immunity.' "* (Emphasis added.)

The Pennsylvania decisions, then, have held that although there may be immunity from suit between husband and wife and between child and parent during the life of the family relationship, the immunity does not extend to and protect the personal representative of the deceased member of the family. Thus where a parent or child dies or the entire family unit is dissolved, there is then no relationship that public policy need protect; the reason for the doctrine is gone and the cloak of immunity disappears. In the instant case the father's death destroyed the family relationship between father and son. There is no longer any relationship in which the state or public policy has any interest.

Defendant in his brief cites the case of Dunlevy v. Butler County National Banks, 1948, 64 Pa.Dist. & Co. 535, as holding to a contrary view. That decision, however, did not turn on the doctrine and there was no extended discus-

sion as to the general or Pennsylvania law on the point. He further directs our attention to Briggs v. City of Philadelphia, 1934, 112 Pa.Super. 50, 170 A. 871, as authority for the statement that an unemancipated minor may not maintain an action against his parent to recover for personal injuries caused by the latter's negligence. But there the court held the action was actually not brought by the minor against the parent, and briefly discussed, as dicta, the doctrine of parental immunity without applying that doctrine in the final determination of the case. Furthermore, this case was reversed by the Supreme Court of Pennsylvania without considering the doctrine in any way. 1934, 316 Pa. 48, 173 A. 316.

The Pennsylvania law does allow suits between child and parent when living in actions relating to real property, Sullivan v. Sullivan, 1920, 74 Pa.Super. 396; breach of contract, Dunn v. Dunn, 1935, 118 Pa.Super. 533, 179 A. 795; for accounting of wages, Drusbasky v. Drusbasky, 83 Pittsb.Leg.J. 489 (1935).

 It is my opinion that the minor-plaintiff has set forth a valid legal claim against the administrator-defendant.

The widow-plaintiff asserts a separate cause of action against the estate of her deceased husband to recover damages occasioned by her son's injuries. Much of what has been expressed heretofore is equally applicable with regard to the widow's right to maintain her action.

The development of the law with respect to parental relations is aptly stated in Courtney v. Courtney, 1938, 184 Okl. 395, 87 P.2d 660, 669:

> "One thing of which we are certain is that the old idea of family unity being obtainable only by the reasoned device of the common law in vesting the husband with all the rights and powers and reducing the wife to a nullity before the law is absolutely outmoded and obsolete. There can be no strict unvarying unity between persons possessing mutual rights as against each other; there can be no automatic stability between equals. There, of course, must be a certain unity of purpose in the undertakings of matrimonial union, but this by no means implies that husband and wife must be considered as one for all purposes. The whole trend of civilization has been away from the artificially solidified groups and toward the free individual. Little by little government has progressed from absolutism to democracy, industry has progressed from slavery to the point where the employer and the representatives of his employees contract as equal, and similarly, the family has progressed from the day when the patriarch had the power of life and death over the members of his family to the day when sons choose their own vocations and daughters their own husbands; and the authority and power of the husband and father depends to a great degree upon such affection, respect and esteem as he may have actually won on his own merits. See 30 Law Notes, 165. As the Supreme Court of North Carolina said in Crowell v. Crowell, 180 N.C. 516, 105 S.E. 206, 210; Id., 181 N.C. 66, 106 S.E. 149: 'Whether a man has laid open his wife's head with a bludgeon, put out her eye, broken her arm or poisoned her body, he is no longer exempt from liability to her on the ground that he vowed at the altar to "love, cherish, and protect" her. We have progressed that far in civilization and justice.'"

In other jurisdictions, even where the doctrine of immunity of spouses is applied, it is an immunity personal to the spouse which is not available to the spouse's estate after death. Welch v. Davis, 1951, 410 Ill. 130, 101 N.E.2d 547, 28 A.L.R.2d 656; Robinson's Adm'r v. Robinson, supra; Deposit Guaranty Bank & Trust Co. v. Nelson, supra.

 Similarly, under Pennsylvania law, the immunity doctrine is a defense personal to the spouse and is not available after the spouse has died and the reason for the rule has disappeared.

**508**

Kaczorowski v. Kalkosinski, supra; Dougherty v. Snyder, supra; In re Gracie's Estate, 1893, 158 Pa. 521, 27 A. 1083. In the latter case a husband presented a claim against his wife's estate for certain bank deposits made in her name during her lifetime. The court held that while the husband could not sue his wife during her lifetime because of the marital relationship, that disability did not continue after her death.

It is the opinion of this Court that the family immunity doctrine under Pennsylvania law, whatever may be its validity as *between members of a living family relationship*, whether husband and wife or parent and child, *does not extend beyond the life of a family member* protected thereby and is not available to his estate.

Accordingly, the complaint states a good cause of action.